James R. BUTERA, Plaintiff–
Appellant,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant–
Appellee.

No. 97–2838.

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1998.

Decided March 31, 1999.

Paul J. Clymer (argued), Gagliardi, Nelson & O'Brien, Salem, WI, for Plaintiff–Appellant.

Thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, Gary A. Sultz (argued), Kelly Rausch Larson, Social Security Administration, Office of the General Counsel, Region V, Chicago, IL, for Defendant–Appellee.

Before COFFEY, EASTERBROOK and EVANS, Circuit Judges.

COFFEY, Circuit Judge.

In October of 1992, the unemployed plaintiff-appellant, James Butera ("Butera"), applied for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), 1382, and 1382c(a), contending that he was "disabled" and unable to work as a result of severe back and leg pain. Butera's application was denied by the Wisconsin Department of Health and Family Services, Division of Disability Determination, after a finding that Butera was not "disabled" within the parameters of the Social Security Act. Butera appealed the denial to an administrative law judge ("ALJ") at the Department of Health and Human Services Office of Hearings and Appeals who determined, on March 9, 1994, that he was not disabled. Butera appealed the ALJ's decision to the United States District Court for the Eastern District of Wisconsin which denied Butera's claim for benefits, dismissed the action, and entered an order and judgment on March 26, 1997. On appeal, Butera argues that the ALJ erred in failing to allow him to cross-examine the Commissioner's experts and in finding that he was not disabled. In response, the Commissioner points out that Butera's notice of appeal was not timely filed. We affirm.

## I. BACKGROUND

Butera contends that he was "disabled" as a result of back and leg pain which commenced in 1978 and thereafter, in May of 1992, became so debilitating that it rendered him unable to work. On October 28, 1992, Butera applied to the Wisconsin De-

partment of Health and Family Services for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), 1382, and 1382c(a). On November 18, 1992, the Wisconsin Department of Health and Family Services requested that Butera undergo a thorough medical examination and evaluation to determine the nature of his disability. Three days later, on November 21, 1992, Butera sought emergency department treatment at a hospital in Kenosha, Wisconsin, complaining of severe pain in his back and right hip. At this time, Butera was examined by C. Newton, M.D. ("Newton") and her examination revealed that Butera limped and complained of pain in his hip, but maintained normal reflexes, a normal ability to raise his right leg, and a normal ability to stand, walk, and balance on his heels and toes. X-rays of the hip were normal, and x-rays of Butera's spine revealed only mild degenerative changes. At this time, Newton referred Butera to two orthopaedic specialists. A magnetic resonance imaging ("MRI") test of Butera's spine, administered by orthopaedic surgeon Karl Scheidt, M.D. ("Scheidt"), revealed a herniated disc in Butera's lumbar spine. Although Butera exhibited a limited range of motion in his hip, Scheidt was of the opinion that Butera possessed normal reflexes, sensation, and motor strength. Dr. Howard An, M.D. ("An"), another orthopaedic surgeon, noted that Butera had difficulty walking, but his motor, reflex, and sensory evaluations were normal. Further, he specifically noted that Butera "appears to have much more pain [than normal] for his degree of herniation and is reluctant to try any types of medication." Dr. An suggested that Butera might benefit from enrollment in a pain clinic.

In completing Butera's state medical assistance form, Dr. Newton opined that Butera's ability to work was limited by hip pain, but that he could lift five pounds and perform light work one or two hours a day, three or four days per week. Along with medical records and evaluations from Scheidt and An, Butera presented Newton's report to the state agency reviewing his claim for disability benefits and supplemental security income. Pat Chan, M.D. ("Chan"), and Kenneth L. Bussan, M.D. ("Bussan"), two physicians employed by the Wisconsin Department of Health and Family Services, examined Butera's file and submitted a report based upon their review of the available record. They found that Butera retained the ability to lift fifty pounds occasionally, lift twenty-five pounds frequently, and stand, sit, or walk up to six hours each in an eight hour day. Based on the Department of Health and Family Services physicians' analysis of Newton's report and the medical records and findings of Scheidt and An, Butera's claim for disability benefits and supplemental security income was denied on January 12, 1993. Butera filed for reconsideration, which was also denied. On March 30, 1993, Butera requested a hearing before an ALJ to review the denial of benefits. Prior to the hearing, Butera objected to the inclusion of the state physicians' report in the record and alternatively requested that the two state physicians be subpoenaed to appear at the hearing on the case. In support of his objection, Butera claimed that the Department of Health and Family Services physicians had only reviewed the medical reports of Scheidt and An and had not personally examined him and thus had issued their opinions on less than a full record. The ALJ denied Butera's request because, in his opinion, the presence of the doctors "would not aid in the search for truth." The ALJ noted that he would weigh the opinions of the state physicians pursuant to the regulations and consider that they had not examined Butera and that their opinions, like all others in the record, had not been subject to cross-examination. On March 9, 1994, the ALJ determined that even though Butera was suffering from severe back and leg pain as a result of the disc herniation, he nevertheless retained a "residual functional capacity" to perform a full range of light

work. 20 C.F.R. §§ 404.1567 and 416.967. The ALJ, after evaluating all of the reports before him, also found that, considering Butera's "residual functional capacity," as well as his age, limited education, and work experience, he was not "disabled." Butera appealed the ALJ's decision to the United States District Court for the Eastern District of Wisconsin. The case was referred by the trial judge to a magistrate judge. Both parties filed for summary judgment, and the magistrate judge concluded that the ALJ had erroneously denied Butera's subpoena request. The matter was returned to the district judge who, in turn, disagreed and entered an order of judgment rejecting the magistrate's recommendation, denying Butera's appeal, and dismissing the action. Also, for reasons undisclosed, the trial judge concluded that the magistrate's recommendation "is herewith affirmed in all respects." On April 9, 1997, the tenth day following entry of judgment, the Commissioner filed a motion for clarification of judgment under Fed.R.Civ.P. 59(e), requesting that the trial court amend its judgment to resolve the inconsistency by entering a new order rejecting the magistrate's recommendation. The next day, April 10, Butera filed a motion requesting that the trial judge "consider amending his judgment to be consistent with the magistrate's recommendation." One week later, on April 17, 1997, the court resolved the inconsistency and granted the Commissioner's motion for clarification and entered another order dismissing Butera's action in its entirety. Thereafter, on May 16, 1997, the district court denied Butera's motion to amend the original judgment, and on July 15, 1997, 60 days after the denial of Butera's motion to amend the original judgment (May 16) and 92 days after entry of the trial judge's amended judgment (April 17), Butera filed a notice of appeal with this Court.

## II. ISSUES

On appeal, we consider whether Butera's appeal was timely filed. We also consider whether substantial evidence supports the ALJ's finding that Butera remained capable of light work and was not "disabled" within the meaning of the Social Security Act and whether the ALJ's denial of Butera's request for a subpoena of the two Department of Health and Family Services physicians, Chan and Bussan, was proper.

## III. DISCUSSION

### A. The Timeliness of Butera's Appeal

On appeal, initially we consider whether Butera's notice of appeal was timely filed. The Commissioner contends that Butera's post-judgment motion was not a timely Rule 59(e) motion and thus did not toll his appeal. The Commissioner argues that Butera's notice of appeal was filed more than 60 days after the entry of the judgment denying Butera's disability benefits, and therefore his appeal is untimely.

This Court, in a previous order issued on October 31, 1997, considered and rejected the Commissioner's argument. A motions panel determined that Butera timely appealed the amended judgment. The motions panel cited *U.S. E.E.O.C. v. Gurnee Inns, Inc.*, 956 F.2d 146, 149 (7th Cir.1992), for the proposition that the Court is "reluctant to hold that a party can be barred from appealing on the basis of an order that is not explicit." In *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir.1995) this Court stated that "[t]he doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit." In other words, a prior ruling of the Court dealing with the same subject matter and same parties in the same case is conclusive and is the law of the case. As such, we are not obligated to reconsider an issue that has previously been resolved before a motions panel of this Court at an earlier date. Thus, we move to consideration of the substantive issues of the case.

## B. The ALJ's Determination that Butera Was Capable of Light Work

We consider whether the ALJ reasonably found Butera capable of performing light work and, therefore, not disabled within the meaning of the Social Security Act. In reaching this finding, we consider whether the ALJ properly evaluated Butera's credibility and the opinions of the examining and/or reviewing physicians/surgeons contained within the record, including those of Chan, Bussan, Newton, An, and Scheidt. Butera contends that the trial court lacked substantial evidence to reject Newton's opinion concerning Butera's functional capacity. Additionally, Butera argues that the ALJ lacked substantial evidence to conclude that he was exaggerating his pain, despite the fact that the medical opinion reflected in the findings of the orthopaedic specialist An stated that Butera "appears to have much more pain [than normal] for his degree of herniation and is reluctant to try any types of medication" and An had suggested to Butera that he might benefit from enrollment in a pain clinic to learn how to deal with a degree of pain with and/or without the benefit of medication. The Commissioner responds that the ALJ properly determined that Butera could perform a significant number of jobs in the national economy and, thus, did not meet the statutory standard for being disabled.

The ALJ was charged with determining the extent to which Butera's medical impairments limited his ability to perform work-related tasks. The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to ... last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ is required to sequentially address each of the following five issues in determining whether a claimant is disabled under the act: (1) is the claimant presently employed; (2) is the claimant's impairment or combination of impairments severe[1]; (3) do the claimant's impairments meet or exceed any of the specific impairments listed within the Code of Federal Regulations which the Commissioner acknowledges to be conclusively disabling; (4) are the claimant's impairments of such a nature that they limit his remaining or residual functional capacity to the degree that he is no longer able to perform the duties and demands of a former occupation; and (5) is the claimant unable to perform any other work in the national economy considering his age, education, and work experience. See Wolfe v. Shalala, 997 F.2d 321, 322–23 (7th Cir.1993) (citations omitted). If a claimant has satisfied the first two steps, he will automatically qualify as disabled if he suffers from a listed impairment. If the claimant does not have one of the impairments listed, but cannot perform his past work, as the ALJ found in this case, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work in the national economy. See Allen v. Sullivan, 977 F.2d 385, 387 (7th Cir.1992). In order to satisfy this burden, the Commissioner has promulgated a regulatory standard to make the determination whether any other job can be performed. 20 C.F.R. § 404, Subpart P, App. 2. The vocational factors listed that are considered in this standard include age, education, and work experience. These three are combined with the claimant's residual functional capacity, which is his maximum work capability for sedentary, light, medium, heavy, or very heavy work. See id. Based on the record in this case, including the credibility of Butera's testimony and the opinion of the two Department of Health and Family Services physicians, Chan and Bussan, as well as the medical findings of the orthopaedic special-

1. According to the Code of Federal Regulations, a "severe" impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

ists, An and Scheidt, the ALJ determined that Butera was capable of light work and, therefore, was not disabled. Light work means that a person is capable of lifting a maximum of twenty pounds, with occasional lifting of up to ten pounds, and is capable of standing or walking most of the day. 20 C.F.R. §§ 404.1567(b), 416.967(b).

Judicial review of the Commissioner's decision is authorized by 42 U.S.C. §§ 405(g) and 1383(c)(3). Section 405(g) provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." "Although a mere scintilla of proof will not suffice to uphold the SSA's findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir.1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). Because the Commissioner is responsible for weighing the evidence, resolving conflicts, and making independent findings of fact, *see Perales*, 402 U.S. at 399–400, 91 S.Ct. at 1426, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled. *See Diaz*, 55 F.3d at 305. Furthermore, when Congress expressly delegates the authority to an agency to promulgate regulations implementing a particular statutory provision, the agency's regulations are "entitled to more than mere deference or weight ... [they are] entitled to 'legislative effect.'" *Schweiker v. Gray Panthers*, 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981) (quoting *Batterton v. Francis*, 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977)).

In the case under consideration, Butera's allegation of disability must, to a degree, be based on the credibility of his subjective description of the symptoms and functional limitations that stem from his impairment. The ALJ was not persuaded by Butera's description of his symptoms and limitations and found that Newton's testimony, which was based upon Butera's complaints, was entitled to little weight. The ALJ, upon review of all the evidence in the record, gave credence to the findings of the independent expert orthopaedic surgeons and the two Department of Health and Family Services physicians and reached a conclusion about those functional activities in which Butera could engage. Specifically, the ALJ found that Dr. An had noted that Butera "appears to have much more pain [than normal] for his degree of herniation and is reluctant to try any types of medication" and should enroll and participate in a pain clinic. The ALJ also relied on Dr. Scheidt's finding that Butera possessed normal reflexes, sensation, and motor strength. While the ALJ found that Butera experienced some pain that would prevent him from performing heavier work, he specifically detailed a number of reasons for disbelieving Butera's description of the degree of functional limitation he was experiencing: (1) Butera was vague and evasive in answering questions; (2) Butera was hesitant and indefinite in describing the character, severity, and location of his pain; and (3) Butera declined, for reasons unknown, to volunteer any information about his work history, forcing the ALJ to ask detailed questions which revealed that Butera had been imprisoned on a burglary conviction and had been assessed interest and penalties for income tax evasion. The ALJ's credibility determination of Butera, based on these three factors, is precisely the sort of determination that this Court has recognized is entitled to particular deference as it "involve[s] intangible and unarticulable elements which impress the ALJ, that, unfortunately leave 'no trace that can be discerned in this or any other transcript.'" *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir.1993) (quoting *Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir.1989)). In light of our holding in *Edwards*, we are of the

opinion that the ALJ reasonably determined that the evidence as a whole did not lend credibility to Butera's assertion that he was "disabled" and completely unable to work as a result of back and leg pain. Furthermore, it is interesting to note that Butera gave no history of back ailments prior to the time he visited the emergency room, nor had he sought any treatment for his alleged pain prior to the emergency room episode or his application for disability benefits. When he initially sought treatment, he claimed he was suffering from chronic hip pain, but his x-rays revealed only mild degenerate changes in his spine. The orthopaedic surgeon, Scheidt, later discovered the herniated disc, but Butera refused to diligently follow his prescribed treatment regimen. The ALJ also noted that the orthopaedic surgeons, An and Scheidt, who examined Butera found no evidence of motor, sensory, or reflex loss, and furthermore Butera demonstrated the ability to walk on his heels and toes and the ability to straighten his legs.

Also, the ALJ relied on An's examination of Butera in concluding that Butera was exaggerating his pain. Butera takes issue with the ALJ's reliance on An's statement and argues that An did not state unequivocally that Butera was exaggerating his complaints and that this conclusion was reached by the ALJ, not An. Thus, Butera contends that there is insufficient substantial evidence supporting the conclusion that he was exaggerating his pain. However, it is undisputed that An did state unequivocally that the pain Butera complained of was greater than would have been expected in light of the MRI results concerning his herniated disc. An stated: "[Butera] appears to have much more pain for his degree of herniation and is reluctant to try any types of medication." This is not significantly different from what the ALJ stated in his opinion.

Also, one of Butera's treating physicians, Newton, concluded that Butera was in chronic pain and could not lift more than five pounds. It should be pointed out that the ALJ considered Newton's testimony and weighed it in conjunction with the medical findings of Scheidt and An, as well as the report of Department of Health and Family Services physicians Chan and Bussan. Based on this evidence the ALJ concluded that he "must reject the very low assessment of the claimant's physical capacities provided by Dr. Newton." Furthermore, this Court has repeatedly stressed that "a claimant's treating physician may be biased in favor of the claimant; bias that a consulting physician may not share...." *Micus v. Bowen,* 979 F.2d 602, 607 (7th Cir.1992). "The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability. The regular physician also may lack an appreciation of how one case compares with other related cases. A consulting physician may bring both impartiality and expertise." *Stephens v. Heckler,* 766 F.2d 284, 289 (7th Cir.1985) (citation omitted).

Butera claims that the ALJ's decision to reject Newton's opinion was contrary to the substantial evidence that demonstrated that Newton had taken x-rays and had fully examined Butera on three occasions. However, in rejecting Newton's opinion, the ALJ applied the criteria that the regulations require to weigh the value of a physician's opinion: (1) the nature and extent of the treatment relationship; (2) the degree to which the medical signs and laboratory findings support the opinion; (3) the degree to which the opinion takes into account all of the pertinent evidence in the record; (4) the persuasiveness of the opinion rendered; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the physician. 20 C.F.R. §§ 404.1527(d), 416.927(d). Considering each of these criteria in turn, we note initially that the treatment relationship for Newton's medical opinion was based on a one-time emergency room examination of Butera. Second, the medical signs and laboratory findings in this case, including x-rays and MRI tests, fail to lend

support to Newton's opinion in as much as Butera's hip x-ray was normal and Scheidt's MRI test revealed that Butera's pain was exaggerated relative to the extent of herniation visible to the examining physician. Third, Newton's medical report revealed that in reaching her medical conclusion, Newton did not obtain any evidence beyond her own examination and Butera's subjective complaints. Fourth, Newton's opinion was not persuasive in that she expressly stated that her findings were based in part on Butera's complaints, which the ALJ delineated could be discounted. Fifth, the two orthopaedic specialists who examined Butera, An and Scheidt, were not generally in agreement with Newton's conclusions. And sixth, Newton referred Butera to an orthopaedic surgeon because she was not a spine specialist.[2]

In conclusion, Butera has fallen short of demonstrating that the ALJ lacked substantial evidence to reject Newton's opinion concerning Butera's functional capacity. Additionally, Butera has not established that the ALJ lacked substantial evidence to conclude that he was exaggerating his pain.

### C. The ALJ's Denial of Butera's Subpoena Requests

■ The plaintiff next argues that the ALJ committed reversible error in denying Butera's subpoena requests for the two reviewing physicians with the Wisconsin Department of Health and Family Services, Chan and Bussan. The Commissioner responds that the ALJ properly denied Butera's subpoena requests because Butera failed to satisfy the regulatory requirements that he demonstrate that the subpoenas were "reasonably necessary to the full presentation of the case" or that the physicians would provide important facts that could not be proved without the issuance of the subpoenas, as provided in 20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1).

In a letter dated October 4, 1993, the plaintiff raised a hearsay objection to the residual function capacity assessment of Department of Health and Family Services physicians Chan and Bussan. The plaintiff sought subpoenas of these two physicians in order that he might compel their attendance at the hearing to allow him to cross-examine them. When the plaintiff renewed his objections at the hearing, the ALJ rejected the hearsay objection and refused to grant the subpoenas. The ALJ stated that: (1) he would take into account the lack of cross-examination; (2) the plaintiff would not bear the expense of producing the doctors; and (3) he generally gave greater weight to the opinions of treating physicians, including Scheidt, An, and Newton, than those of nontreating physicians. The ALJ concluded that the appearance of the state agency physicians would not aid the search for truth.

■ As noted by the Commissioner, an ALJ is authorized to issue a subpoena "[w]hen it is reasonably necessary for the full presentation of a case." 20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1). The party requesting the subpoena must "state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena." 20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2). The Commissioner's regulation is consistent with the Administrative Procedures Act, which entitles an administrative claimant to "such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d). "Cross-examination is thus not an absolute right in administrative cases." *Central Freight Lines, Inc. v. United States*, 669 F.2d 1063, 1068 (5th Cir.1982). In *Perales*, the Supreme Court considered whether the reports of several examining physicians in a benefits case constituted "substantial evidence" supporting a nondisability finding, notwithstanding the hearsay character of the report and the absence of cross-exami-

---

**2.** The record discloses that Newton was an emergency room physician.

nation. The Court, in ruling that hearsay was permissible in administrative hearings, noted the "vast workings of the social security administrative system [which] make for reliability and impartiality in the consultant reports," as well as the "routine, standard and unbiased" nature of the reports themselves. *Perales*, 402 U.S. at 403–04, 91 S.Ct. at 1428. The Court also acknowledged as an "additional and pragmatic factor" the sheer "cost of providing live medical testimony at" all ALJ hearings. *Perales*, 402 U.S. at 406, 91 S.Ct. at 1430.

The Sixth Circuit addressed the right to subpoena witnesses in *Calvin v. Chater*, 73 F.3d 87 (6th Cir.1996). The court held:

> We do not read *Perales* as suggesting that the right to subpoena witnesses is "absolute" in the sense that a party who requests a subpoena is automatically entitled to its issuance whether or not he has complied with the published rules governing such matters.
>
> * * *
>
> The claimant in *Perales* had not requested a subpoena at all, but if he had filed a request that failed to demonstrate need in the manner required by the regulations, we assume that the result would have been the same.

73 F.3d at 92 (citation omitted). Similarly, in *Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir.1988) (citation omitted), the Ninth Circuit held that a disability claimant is "not entitled to unlimited cross-examination, but is entitled to such cross-examination as may be required for a full and true disclosure of the facts. The ALJ has discretion to decide when cross-examination is warranted." *See also Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir.1994).

In the case under consideration, Butera fell short of fulfilling the regulatory requirement that he demonstrate that the presence of the Department of Health and Family Services physicians, Chan and Bussan, was required for a full presentation of his case or that the physicians would provide specific, important facts that could not

otherwise be established. He offered no convincing argument why cross-examination of Chan and Bussan was necessary in his particular case. The only reasons Butera offered—that Chan and Bussan had not examined him personally and that their opinions were based on an incomplete record—are arguments related to the weight of the evidence, not as to why cross-examination was necessary. The ALJ in this case accepted Butera's position concerning the weight of the evidence, noting that "minor weight only, if that," would be given to the Department of Health and Family Services physicians' reports. The truth of the matter is that the ALJ found Butera more functionally limited than did the physicians of the Department of Health and Family Services. Furthermore, the ALJ reasoned that Butera did in fact have the opportunity to review and introduce all the evidence considered by the Department physicians as well as the opportunity to submit additional evidence.

■ In response, Butera somehow contends that the act of simply requesting a subpoena ultimately makes the issuance of the subpoena necessary for the full presentation of the case. To back this proposition, Butera cites the case of *Lonzollo v. Weinberger*, 534 F.2d 712, 714 (7th Cir. 1976), which held that "[a] written report by a licensed physician who has examined the claimant may be received as evidence ... but the claimant has a right to subpoena the physician and cross-examine him concerning the report." Butera also cites *Wallace v. Bowen*, 869 F.2d 187 (3rd Cir. 1989), for the same proposition. Initially, we point out that as the Sixth Circuit determined in *Calvin v. Chater*, 73 F.3d at 92, "[w]e do not read *Perales* as suggesting that the right to subpoena witnesses is 'absolute' in the sense that a party who requests a subpoena is automatically entitled to its issuance whether or not he has complied with the published rules governing such matters." Also, *Lonzollo* is not applicable to the circumstance in this case because *Lonzollo* concerned testimonial

evidence that was submitted *after* the ALJ hearing had occurred. In this case, the medical testimony was submitted *at the time of* the ALJ hearing. *Wallace* also concerned the circumstance where evidence was submitted after the initial hearing. The court in *Wallace* noted "[i]t may be that different considerations apply to cross-examination with respect to post-hearing evidence because the applicant may find it more difficult to respond effectively to post-hearing reports in the absence of an opportunity to present live rebuttal evidence." 869 F.2d at 194. Thus, because Butera failed to convince the ALJ of the necessity of the presence of the Department of Health and Family Services physicians for purposes of cross-examination, the ALJ did not err in refusing to issue Butera the requested subpoenas.

## IV. CONCLUSION

Substantial evidence supports the ALJ's finding that Butera remained capable of light work and was not disabled, and the ALJ reasonably discounted Butera's subjective complaints of pain as well as the opinion of a physician who was not a spine specialist. Also, the ALJ's action in denying Butera's request for a subpoena of the two state physicians was proper, for the plaintiff-appellant failed to demonstrate that a subpoena was reasonably necessary for the full presentation of his case or that the testimony would provide important information and facts that could not be presented without the issuance of a subpoena.

AFFIRMED.