In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1155

Gerard C. Kepple, II,

Plaintiff-Appellant,

v.

Larry G. Massanari, Acting Commissioner
of Social Security,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CV 4469--Ian H. Levin, Magistrate Judge.

Argued September 20, 2001--Decided October 4, 2001


   Before Bauer, Manion, and Evans, Circuit
Judges.

   Bauer, Circuit Judge.   In November of
1994, Gerard C. Kepple, II applied for
disability benefits and supplemental
security income with the Social Security
Administration (SSA). His application and
subsequent request for reconsideration
were denied. Kepple then requested a
hearing before an administrative law
judge (ALJ); subsequently, the ALJ found
that Kepple could perform certain
sedentary jobs and denied his
application. Kepple appealed to the
Appeals Council, which denied review,
making the ALJ's determination the final
decision of the SSA. Kepple then sought
judicial review of the SSA's decision
denying his application in the district
court based on 42 U.S.C. sec. 405(g). The
district court affirmed the SSA's
decision. On appeal to this court, Kepple
argues that the evidence failed to
support the ALJ's conclusions. For the
reasons set forth in the following
opinion, we affirm.

I.  BACKGROUND
   On November 10, 1994, Kepple applied for
disability benefits and supplemental
security income with the SSA claiming
that he was disabled since April of 1990
due to a variety of medical problems
stemming from diabetes. Kepple has not

been employed since 1990 when he worked in his father's law office as a clerk. Prior to that he had worked on an assembly line and had loaded and unloaded trucks for a delivery service. At the time the ALJ rendered her decision in 1997, he was twenty nine years old, had graduated from high school, and had one year of college. At the time the district court rendered its decision, Kepple had three children, ages two, three, and six, and lived with his parents. He was the primary caregiver for the children, doing chores such as cooking and cleaning. Kepple was able to watch television, drive a car, and he took a trip to Hawaii in 1993.

Kepple's ailments stem largely from diabetes mellitus, and include kidney disease, diabetic retinopathy, cataracts, and fatigue. There is some disagreement over the actual acuity of Kepple's vision, which he argues was deteriorating but the ALJ found that it was approximately 20/60 (corrected) in both eyes. Due to his ailments, Kepple was un able to lift or carry more than ten pounds at a time, could only walk or stand for limited periods of time, and could not perform jobs that required peripheral vision or sustained reading. Most of Kepple's aliments, including his diabetes and vision problems, are controllable with proper treatments and dietary restrictions. However, Kepple has often failed to follow his dietary restrictions or obtain certain treatments causing further complications.

A medical expert, Dr. Glickman, an internist, testified at the hearing that Kepple could perform sedentary work with some vision restrictions. In a letter dated September 15, 1992, Dr. Rubinstein, a nephrologist, stated that Kepple's eyesight was diminishing and nearing blindness. However, this letter was contradicted by the reports of two ophthalmologists which concluded that Kepple's eyesight, while impaired, was stable.

A vocational expert also testified at the hearing that despite his ailments Kepple could perform between 1,600 and 3,400 unskilled sedentary jobs in the national economy. These jobs included cashier, security monitor, charge account clerk, telephone quotation clerk, and

assembly worker. Based on the evidence and testimony produced at the hearing, the ALJ found that Kepple was not "disabled" within the meaning of the Social Security Act, 42 U.S.C. sec.sec. 423(a)(1)(D), 1382(a).

II.  ANALYSIS

A.  Standard of Review

   We employ the same standard of review as the district court and review the ALJ's findings to determine if they are "supported by substantial evidence." Richard v. Perales, 402 U.S. 389, 399-401 (1971); Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000). Substantial evidence, although more than a mere scintilla of proof, is "no more than such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995) (quoting Perales, 402 U.S. at 389). Though we review the entire record to determine if there is relevant evidence adequate to support the ALJ's conclusion, we do not decide the facts anew, re-weigh evidence, or substitute our judgment for that of the ALJ. Butera v. Apfel, 173 F.3d 1049, 1055 (7th Cir. 1999).

B.  Sufficiency of the Evidence

   The dispute in this case is primarily over the weight accorded to the facts by the ALJ. Kepple argues that the ALJ "considered only evidence supporting the Acting Commissioner's position without explaining why evidence favorable to the claimant was not evaluated." However, as noted above we do not engage in a weighing of the evidence or substitute our judgment for that of the ALJ. From the record it is clear that the ALJ neither ignored evidence favorable to Kepple nor was the medical expert unqualified to render an opinion. On the contrary, from the ALJ's findings it is clear that she thoroughly reviewed all the evidence and did exactly what she was supposed to do: determine credibility and weight. The ALJ's conclusion that Kepple is not disabled is supported by the opinion of the medical expert, as well as two ophthalmologists. In addition, the fact that Kepple is able to drive a car, watch television, and take care of three small children belies his argument that

his vision is so significantly impaired as to prevent him from working. Furthermore, the vocational expert identified a number of jobs in the national economy that a person with Kepple's medical restrictions could hold. Kepple may disagree with the ALJ's findings, but they are "supported by substantial evidence" and will be upheld.

## C. Waiver

Kepple also appeals the district court's determination that he should have objected to the qualifications of the medical expert in the administrative hearing. However, the district court first reached the merits of the argument and concluded that the medical expert was qualified to testify. See Memorandum Opinion and Order at 21-22. We review the district court's ruling on the merits of the argument. Kepple admits that a medical expert is "not disqualified from testimony because [his] practice speciality does not lie within the area of medicine reflected by claimant's impairment." See also 20 C.F.R. sec. 404.1513(a)(1) (2000). As noted previously, the conclusions of the medical expert are supported by two additional reports by ophthalmologists as well as Kepple's own admissions. Thus, we agree with the district court and conclude that the medical expert was competent to testify and decline to address the waiver issue.

For purposes of completeness we note that the Supreme Court's recent decision in Sims v. Apfel, 530 U.S. 103, (2000) (plurality opinion), held that for purposes of judicial review a claimant does not waive an issue by failing to raise it in the Appeals Council. However, the Court specifically left open the question of whether an issue is waived if it is not raised in the administrative hearing. Id. at 107. The first circuit later directly addressed this question and declined to extend Sims to the administrative hearing. Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001), petition for cert. filed, (Aug. 29, 2001) (No. 01-6108). The first circuit reasoned that applying Sims to the administrative hearing would "cause havoc" and undermine "the administrative process." Id. Whether such a terrible result would occur if Sims were applicable to administrative

hearings in the SSA is a question this circuit or the Supreme Court may later address when directly confronted with the issue.


CONCLUSION

   Because the findings of the ALJ are supported by substantial evidence we affirm the ruling of the district court.