Katleen W. **BOUCHARD**, Plaintiff–Appellant,

v.

Jo Anne B. **BARNHART**, Commissioner of Social Security, Defendant–Appellee.

No. 01–2352.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 30, 2002.

Decided June 14, 2002.

Before Hon. DANIEL A. MANION, Hon. DIANE P. WOOD, Hon. TERENCE T. EVANS, Circuit Judges.

### ORDER

Katleen Bouchard has appealed from the district court's determination that decision of the Commissioner of Social Security to deny certain benefits to her was supported by substantial evidence and thus should be affirmed. While we are sympathetic to the arguments Bouchard has presented before us, it is not up to us to make a *de novo* determination of her situation. We conclude, as the district court did before us, that the Commissioner's decision was supported by the necessary evidence and we therefore affirm.

### I

Bouchard was born on April 29, 1948, in the Netherlands. She lived there through her college years, at which point she moved to the United States. From 1985 until the time when she became disabled, she worked full-time as a producer of television commercials in Chicago. Her job required long hours and extensive domestic and international travel. By the time she quit working in 1991, she was earning $85,000 annually; she also had full medical and disability benefits.

A two-pack-a-day smoker, Bouchard started having trouble breathing in November 1990. She began visiting a series of doctors hoping to uncover the source of her physical problems and to obtain relief from them. One such doctor was Dr. James Cohn, an internist at Northwestern University Medical Center, who diagnosed her with pulmonary infiltrates with eosinophilia—that is, "transient migratory shadows on the chest x-ray, often symptomless, but there may be cough, fever, and breathlessness." Steadman's Medical Dictionary 602 (27th ed.2000). Dr. Cohn also solicited the opinion of his colleague, Dr. Michael P. Houston, who was a specialist in pulmonary medicine. Dr. Houston examined Bouchard and determined that she was exhibiting mild symptoms of coughing and wheezing that appeared to be a response to antibiotic treatment. Some time later, in May 1991, Dr. Cohn reported that Bouchard's condition had resolved itself and that "pulmonary function tests indicated very mild obstructive disease." At that time, he cleared Bouchard to return to work.

Bouchard tried to do just that, but she found that she could manage only to check her mail and messages before she became completely exhausted. Since that time in approximately mid–1991, she has not been employed. Instead, she turned to more doctors for help. In May 1991 she began seeing Dr. Alan Leff, the director of pulmonary medicine at the University of Chicago, who diagnosed Bouchard with advanced emphysema. In December 1991, Bouchard formally applied for Social Security disability benefits. At bit later, she submitted a letter from Dr. Leff (written in January 1992) in support of her applica-

tion, in which he opined that she was "totally disabled."

Dr. Leff continued to treat Bouchard for the next few years. While she was hospitalized for the birth of her son in March 1992, Dr. Leff treated her for a respiratory attack. Bouchard has never, however, required hospitalization for her emphysema. On three instances, according to Dr. Leff, she telephoned his office to report that she was having difficulty breathing, and on each occasion, either the doctor or his staff talked her through the anxiety that was causing her shortness of breath. By June 1992, Dr. Leff reported to the Social Security Commission that Bouchard's condition was "under control," but he still restricted her to "less than sedentary" work.

At the request of the administrative law judge (ALJ) handling her case, Bouchard was seen in September 1992 by Dr. Edith Panopio, a consultative examiner who maintains a general practice. Dr. Panopio did not find any evidence of distress with respect to Bouchard's breathing, but she did report that Bouchard's breath sounds were diminished. Dr. Arthur Hyde, a state-agency reviewer licensed in general surgery, also reviewed Bouchard's records. It was his opinion that Bouchard was able to continue doing a range of light work, as long as she avoided exposure to environmental pollutants. Finally, again at the ALJ's request, Dr. Francisco Jiminez, an emergency medicine doctor, reviewed Bouchard's case and found no significant limitations on her ability to work other than her need for an environment free of respiratory irritants.

Meanwhile, however, Bouchard's respiratory problems were leading to other difficulties. She began experiencing anxiety and depression, which in turn led her to seek marital counseling with a therapist, Connie Stuetzer. (Unfortunately, Bouchard's efforts to salvage her marriage proved unsuccessful; she and her husband divorced in 1995.) In 1994, she visited Dr. William Reich, a clinical psychologist; Reich concluded that Bouchard was suffering from depression stemming from her inability to work. He also noted that she was taking both an antidepressant and an anti-anxiety medication prescribed by a Dr. Gary Malek. In 1995, yet another doctor, Dr. John Conran, gave her a psychiatric examination and found her to be "very depressed." On the other hand, Dr. Conran noted that "her mental status, memory, and ability to reason do no [sic] appear to be significantly impaired."

## II

At her initial hearing before the ALJ, which took place in November 1993, Bouchard testified that she was fatigued almost all of the time and had to nap at least a hour every afternoon. She also reported that she could no longer read for extended periods and that she could no longer exercise or participate in outdoor activities. She employed a full-time housekeeper to manage the household and to care for her son; beyond that, her mother and sister often stopped by to help her with daily activities. Last, she testified that she could walk only for a half-hour each day and needed to rest after walking one block.

After the hearing, the ALJ performed the standard five-step analysis in order to determine whether Bouchard was "disabled" for purposes of the statute. See 20 C.F.R. § 404.1520. He agreed that Bouchard had not engaged in substantial gainful employment since November 1990 (step 1) and that the medical evidence established chronic obstructive pulmonary disease (step 2). At step 3, however, he found that she did not have an impairment or combination of impairments that met the listings in the regulations. That finding made it necessary for him to reach

steps 4 and 5 (whether she was precluded from performing her past work, and if so, whether there remained a significant number of jobs in the national economy that she could perform).

In order to consider these points, the ALJ used vocational expert Cheryl Hosieth, who testified at the hearing. In response to hypothetical questions posed by the ALJ, Hosieth testified that if Bouchard were merely restricted to sedentary work, there were approximately 15,000 marketing and advertising positions available that were similar to her former employment. Hosieth also acknowledged, however, that if Bouchard was unable to work for an extended period of time (as Bouchard had testified) then employment was precluded altogether. This set up a credibility issue for the ALJ with respect to Bouchard's testimony. The ALJ ruled adversely to Bouchard, finding that her testimony of the severity of her functional limitations was not credible and that·she was in fact able to return to her past work as a television commercial producers. The ALJ thus concluded that her respiratory problems did not render her disabled and denied her request for benefits.

Bouchard appealed that decision to the Appeals Council, which remanded the case back to the ALJ for further review of her mental impairments. A second hearing took place in November 1995, at which Bouchard testified that she was doing better mentally. She stated that she was no longer taking one of her medications, Prednisone, because her doctors had warned her that taking that drug now might lessen its effectiveness in the more advanced stages of her illness. Less optimistically, she also testified that she was still unable to concentrate on complicated reading material.

At the second hearing, a different vocational expert, Julie Bose, testified. Re-lying on Dr. Leff's physical capability assessment from September 1994, Bose testified that Bouchard would be unable to maintain employment, given her limitations and her need for frequent absences from work. At that hearing, the ALJ also reviewed the report submitted by psychologist Dr. Reich and the psychiatric exam results submitted by Dr. Conran.

Based on the record as a whole, the ALJ issued a partially favorable decision. He found that Bouchard's severe depression, which had an "onset" date of May 1993, when coupled with her physical impairments rendered her disabled. On the other hand, he also found that the medical testimony showed a sufficient improvement in her mental state by the second hearing in November 1995 to warrant a finding that her disability had ceased by that time. Accordingly, he awarded benefits only for the closed period of May 28, 1993, through November 7, 1995, when her depression was most severe. She appealed again, but this time the Appeals Council denied her request for review. From that decision, she appealed to the district court, under 42 U.S.C. § 405(g); as noted above, that court entered judgment for the Commissioner, and she has now brought her case to this court.

### III

In reviewing decisions of the ALJ (whose opinion in this case is that of the Commissioner, given the fact that the Appeals Council denied review), this court examines the entire record and does not disturb the ALJ's decision if it is supported by substantial evidence. See *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir.2001). We do not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Clifford v.*

*Apfel,* 227 F.3d 863, 869 (7th Cir.2000). The substantial evidence standard is a difficult one for any disappointed applicant for benefits, but Bouchard offers four arguments to support her claim that it was met here.

First, Bouchard contends that the ALJ incorrectly interpreted the evidence of her daily non-work activities as indications that she could perform work-related duties. The judge failed to take into account the fact that she needs the assistance of both a full-time housekeeper and other members of her family in order to perform those tasks. Furthermore, she argues, the ALJ placed improper weight on the fact that she did not visit the emergency room when she was in distress, and he did not place sufficient weight on her long work history. Had these errors not occurred, she argues, the ALJ would not have discredited her testimony that she was unable to function at all.

But the key concept here is credibility: an ALJ may choose to discredit some or all of the testimony of a claimant (or another witness, for that matter). See *Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir.1999). This court will not overturn such a credibility determination unless it is patently wrong. *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir.2000). In this case, the ALJ had adequate support for his decision. He noted, for example, that Bouchard's testimony about her inability to perform daily activities was inconsistent with the objective medical evidence, with her treatment records, and with significant events in her life, such as her marriage, pregnancy, and moving to a new home. On this record, the ALJ did not commit reversible error when he chose to discredit part of Bouchard's testimony and to conclude instead that she was exaggerating her symptoms.

Second, Bouchard argues that the ALJ improperly discredited the opinion of her treating physician, Dr. Leff. A treating physician's report must be given controlling weight over the report of a consultative examiner, see 20 C.F.R. § 404.1527(d)(2), but when the treating physician's opinion is inconsistent with substantial medical evidence, the ALJ is not required to do so. *Id.* In the latter case, the judge must only demonstrate that he considered the merits of the treating physician's opinion along with the opinions of other doctors. See *Books v. Chater,* 91 F.3d 972, 979 (7th Cir.1996). Once again, we are satisfied that the ALJ properly performed this task. Although Dr. Leff suggested that Bouchard would require a minimum of two months of unexpected absences per year, because of the unpredictability of her condition, no other doctor was of the same view. They did not indicate any need for prolonged or unexpected absences, nor did they mention asthmatic attacks that last for an entire day, as Dr. Leff did. In the face of these inconsistencies, as well as others contained within Dr. Leff's own report, the ALJ was entitled to give Dr. Leff's opinion less weight. See *Pope v. Shalala,* 998 F.2d 473, 486–87 (7th Cir.1993).

Bouchard next asserts that the ALJ "played doctor" and made improper medical judgments about the severity of her respiratory impairments. She surmises that he improperly drew the inference that her condition had improved from the facts that she was no longer taking Prednisone and that, by the time of the second hearing, she could walk farther than she could at the time of the first hearing. But the ALJ also had before him Bouchard's own testimony that her ability to cope with her respiratory problems and her ability to concentrate had improved. Even without the Prednisone evidence (which may have required expert interpretation), the fact

remains that Bouchard was indeed performing more activities such as cooking, straightening up her home, caring for her son, and driving her car to the store. Substantial evidence thus existed to support the conclusion that Bouchard had improved by late 1995.

Finally, Bouchard argues that the ALJ erred at the second hearing by failing to subpoena the non-treating physicians who evaluated her respiratory condition before the first hearing. On this point, the Commissioner's response is more technical: she responds that Bouchard's subpoena request failed to satisfy the requirements of 20 C.F.R. § 404.950(d)(2) because it did not "state important facts that the witness is expected to prove." This is a fair characterization of the request, in our view, given the fact that it merely states that these doctors' opinions were adverse to Bouchard's claim and that she wanted to cross-examine them. More than that is necessary; in the absence of a more particular reason from Bouchard about her need for these witnesses and the testimony they could offer, we cannot find that the ALJ abused his discretion in refusing to subpoena them. See *Butera*, 173 F.3d at 1058.

We add that although the scope of the Appeals' Council remand after the first decision appeared to be limited to additional evidence on Bouchard's mental condition, the ALJ retained the discretion to contact any of the medical sources if he had found that the medical evidence was inadequate to make a determination whether Bouchard was disabled. See 20 C.F.R. § 404.1512(e). (Recall too that it was the interaction between her mental state and her physical state that arguably made her disabled.) The ALJ did not perceive any such inadequacy here, and

Bouchard did not show that contacting these doctors again was likely to result in any new or material evidence that would have affected the ALJ's decision. See *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir.1997).

### IV

Because the ALJ's decision, although quite possibly not the only one that could have been reached on this record, was nevertheless supported by substantial evidence, and because he did not abuse his discretion with respect to the subpoenas, we therefore AFFIRM the judgment of the district court.