**Michael S. FISCHER, Plaintiff,**

v.

**Joanne B. BARNHART, Commissioner of Social Security Administration, Defendant.**

No. 02–C–332.

United States District Court,
E.D. Wisconsin.

Dec. 12, 2002.

Robert C. Angermeier, Angermeier & Rogers, Milwaukee, WI, for Plaintiff.

Penelope C. Fleming, United States Department of Justice, Office of the U.S. Attorney, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

GOODSTEIN, United States Magistrate Judge.

Michael Fischer appeals the decision of the Commissioner of Social Security ("Commissioner"), which denied his application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). This case was randomly assigned to this court. Both parties have consented to the full jurisdiction by a United States Magistrate Judge and thus this case is before this court for all proceedings, including an entry of final judgment. 28 U.S.C. § 636(c); Fed.R.Civ.P. 72(c).

## I. PROCEDURAL HISTORY

On April 8, 1997, the plaintiff filed an application for DIB and SSI alleging disability since September 20, 1996. (Transcript ("Tr.") 90–93). The Plaintiff listed his disabling illnesses or injuries as congestive heart failure, rheumatoid arthritis, and a right knee injury. (Tr. 95). The Social Security Administration ("Administration") denied Plaintiff's application, (Tr. 73–74) and plaintiff requested a hearing. (Tr. 86).

On June 24, 1998, the plaintiff represented by his attorney Robert Angermeier had a hearing before Administrative Law Judge (ALJ) Ronald B. Safren. (Tr. 25–72). At the hearing, both the plaintiff and a Vocational Expert (VE) testified. *Id.* The plaintiff was 46 years old at the time of the hearing and testified that he had a high school education and had taken some technical courses. (Tr. 31). In addition, the plaintiff testified that he had active

rheumatoid arthritis which affected his job performance and caused him to miss seventeen days of work in his last year as a machinist. (Tr. 31–36). Plaintiff further testified he could stand for twenty minutes and walk ten minutes at a time as a result of his ailments. (Tr. 38–40). Plaintiff testified that his rheumatoid arthritis limited the use of his hands in a repetitive motion to one minute and grasping to fifteen minutes. (Tr. 40–42). On October 20, 1998, ALJ Safren issued a decision unfavorable to the plaintiff. (Tr. 11–22). On August 26, 1999, the Appeals Council denied review of ALJ Safren's decision. (Tr. 4–6).

On September 27, 2000, this Court remanded the case to the Commissioner with directions to "... reconsider the plaintiff's RFC in light of the VA disability determination, to reconsider the weight to be afforded Dr. Rosenthal's opinion, and to review additional vocational opinion if necessary." (Tr. 457). The Appeals Council then remanded the matter to ALJ Robert L. Bartelt Jr., after ALJ Safren retired, and instructed ALJ Bartelt to "provide the claimant an opportunity to appear at a hearing." (Tr. 471). ALJ Bartelt's findings and this review are for the limited time period between September 20, 1996, and February 11, 1999. This limited time frame results from a stroke suffered by the plaintiff on February 12, 1999, and an application submitted subsequent to his stroke, pursuant to which the plaintiff was found to be disabled under the listings. (Tr. 442). Without an additional hearing, ALJ Bartelt issued a decision finding that the plaintiff retained the RFC to perform sedentary work that did not require the use of his right hand or wrist repetitively for more than one-third of the workday. (Tr. 438–51). The ALJ also determined that there were a significant number of jobs in the national economy that the plaintiff could perform and that thousands of such jobs were in the Metropolitan Milwaukee Area. *Id.* ALJ

Bartelt's decision became the final decision of the Commissioner when the Appeals Council denied review. (Tr. 422–24).

## II. ANALYSIS

■ Disability cases are decided by reviewing the final decision of the Commissioner to ensure that it is supported by substantial evidence. *Key v. Sullivan,* 925 F.2d 1056, 1061 (7th Cir.1991). The court does not determine if the plaintiff is disabled or re-weigh the evidence; rather, when evaluating whether substantial evidence exists to support the Commissioner's decision, the court considers the relevant evidence that a reasonable person might accept as adequate to support a conclusion, taking into account anything in the record that fairly detracts from its weight. *Young v. Secretary of Health and Human Services,* 957 F.2d 386, 388 (7th Cir.1992). Substantial evidence may be something less than the greater weight or preponderance of the evidence. *Id.* However, the court reviews all the evidence in the record, and the review " 'must be more than an uncritical rubber stamp.' " *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986) (quoting *Garfield v. Schweiker,* 732 F.2d 605, 610 (7th Cir.1984)). The reasons for rejecting particular evidence by the ALJ, if uncontradicted, must be clearly articulated. *Id.; Walker v. Bowen,* 834 F.2d 635, 640 (7th cir.1987). Even if substantial evidence supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law. *Pugh v. Bowen,* 870 F.2d 1271, 1274 (7th Cir.1989).

There is a five-step test for determining if a claimant is disabled. The following are the steps that are followed: (1) whether the claimant is presently unemployed; (2) if so, whether the claimant has a severe impairment or combination of impairments; (3) whether any of the claimant's impairments are listed by the Social Secu-

rity Administration as being so severe as to preclude substantial gainful activity; (4) if not, whether the claimant possess the residual functioning capacity ("RFC") to perform his past work; and (5) if not, whether the claimant is able to perform any other work in the national economy in light of his age education and work experience. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir.2000).

In this case, the ALJ applied the standard five-step process for the relevant time period. At step one, the ALJ determined that the plaintiff had "not engaged in substantial gainful activity since September 20, 1996." (Tr. 450). At step two and three the ALJ determined that the plaintiff had the following conditions that did not meet the listed impairments: history of congestive heart failure, hypertension, rheumatoid arthritis, and degenerative joint disease. *Id.* At step four the ALJ determined that the plaintiff "was probably able to perform his past relevant job as a cashier." *Id.* At step five the ALJ determined that: 1) the plaintiff had an RFC to perform "sedentary occupations which did not require him to use his right hand or wrist repetitively for more than one third of the workday"; 2) "there were still a significant number of jobs in the national economy which he could perform"; and 3) examples of such jobs included "clerical, visual inspector, cashier, receptionist, ticket taker, security monitor and information-order clerk positions...." *Id.* As a result of his analysis, ALJ Bartelt determined that the plaintiff "was not under a disability as defined in the Social Security Act at any time between September 20, 1996, when he alleged becoming disabled and February 11, 1999 one day before he suffered a stroke and was subsequently found to be disabled." *Id.*

Plaintiff, through his counsel, disagrees with the ALJ's determination at both steps four and five and raises several challenges

to the ALJ's determinations. First, the plaintiff alleges ALJ Bartelt violated the law of the case. In addition to the failure to follow the law of the case, plaintiff asserts ALJ Bartelt's RFC finding was not supported by substantial evidence, and ALJ Bartelt violated the Appeal's Council's remand order by not providing the plaintiff an additional hearing.

### A. The Law of the Case

This court remanded the case to the Commissioner "to reconsider the plaintiff's RFC in light of the VA disability determination, to reconsider the weight to be accorded Dr. Rosenthal's opinion, and to receive additional vocational opinion if necessary." (Tr. 457). The plaintiff asserts that ALJ Bartelt violated this remand order (and thus the law of the case) by making determinations contrary to previous determinations by the Commissioner on plaintiff's ability to perform prior work, plaintiff's absence of transferable work skills, and the status of Dr. Rosenthal as the "treating physician". (Pl.'s Br. 3). The defendant's brief does not discuss the issue of the law of the case.

"[I]ssues previously decided, either explicitly or by necessary implication, become the law of the case and such determinations are to be applied absent unusual or compelling reasons." *Angevine v. Sullivan,* 881 F.2d 519, 521 (7th Cir.1989). The question of whether the Commissioner violated the law of the case on remand in an administrative proceeding is answered by considering the scope of the district court's remand order. *See Id.* at 522. "If an issue is left open after remand, the lower tribunal is free to decide it." *Key v. Sullivan,* 925 F.2d 1056, 1062 (7th Cir. 1991). Therefore, to determine if ALJ Bartelt violated the law of the case doctrine, it is necessary to look at this court's remand order.

In this court's remand order, the Commissioner is explicitly ordered to reconsider the weight to be given Dr. Rosenthal's opinion. ALJ Bartelt was free to determine if Dr. Rosenthal's opinion deserved controlling weight as a "treating physician" or less weight. In addition, this court's remand order directed the Commissioner to "reconsider plaintiff's RFC in light of the VA disability rating." (Tr. 457). This remand order did not require the Commissioner to accept the previous conclusions related to the plaintiff's RFC, rather it instructed the Commissioner to include the VA disability rating in a reconsideration of all the factors which effect the plaintiff's RFC. Therefore, the remand order left open for reconsideration all factors which effect plaintiff's RFC including the ability to perform prior work and transferable work skills. ALJ Bartelt's determination did not violate the law of the case. Thus, the inquiry shifts to determine whether ALJ Bartelt's determination is supported by substantial evidence in the record.

### B. Plaintiff's RFC

Plaintiff alleges that there is not substantial evidence in the record to support ALJ Bartelt's determination of the plaintiff's RFC. In this regard, the plaintiff challenges the limited weight the ALJ gave Dr. Rosenthal's opinion. Plaintiff also contends ALJ Bartelt did not properly analyze the plaintiff's credibility in regard to his RFC.

### 1. Dr. Rosenthal

The weight given to medical opinion evidence is codified in 20 CFR 404.1527. Generally, a treating physician's opinion is given controlling weight as long as it is well supported by the medical record and is not inconsistent with the other substantial evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir.2001). However, a claimant is not

entitled to benefits simply because his treating physician opines that he is disabled and unable to work. *Id.* Rather, it is the Commissioner that decides whether the claimant is disabled. *Id.* At the same time, the ALJ must not substitute his judgment for a physician's opinion without relying on other medical evidence or authority on the record. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir.2000).

When reviewing a disability evaluation, the possible biases of the treating physician must be taken into consideration. *Dixon,* 270 F.3d at 1177. The treating physician may too quickly find a disability because of the close relationship with the patient. *Id.* Further, "the claimant's regular physician may not appreciate how her patient's case compares to other similar cases, and therefore a consulting physician's opinion might have the advantages of both impartiality and expertise." *Id.*

In this case, plaintiff argues that Dr. Rosenthal's opinion should be afforded "controlling weight" as the opinion of a treating physician. The Commissioner does not dispute that Dr. Rosenthal treated the plaintiff for arthritis but rejects the notion that Dr. Rosenthal's opinion deserves "controlling weight". The Commissioner further argues that ALJ Bartelt "provided an analysis as to why [Dr. Rosenthal's] opinion was not entitled to significant weight, i.e., that the opinion was not supported and was inconsistent with the other evidence of record." (Def. Br. at 6). ALJ Bartelt specifically criticized, and discounted the opinion of Dr. Rosenthal for three reasons: (1) the opinion was on a form drafted by plaintiff's counsel; (2) the extreme nature of the limitations were not supported by medical evidence; and (3) the infrequency of contact with the plaintiff prior to the opinion. (Tr. 446–447).

As the Commissioner points out, an opinion may be reasonably rejected

by the ALJ when the form is drafted by the plaintiff's attorney and merely requires a check mark or an affirmative response by the doctor. *Dixon,* 270 F.3d 1171, 1177. However, in *Dixon* like this case, the form of the opinion is just one factor "along with all the other facts" in the determination of whether the treating physician is entitled to controlling weight. *Id.* In this case, the other factors that played a part in the ALJ's decision not to give Dr. Rosenthal's opinion controlling weight must also be analyzed.

The second factor which the ALJ points to in disregarding Dr. Rosenthal's opinion is that the "extreme" limitations were "not supported by the medical evidence". (Tr. 447). The correct legal standard when evaluating a treating physician's opinion is whether the opinion is "not inconsistent" with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The ALJ points out two reasons why he feels Dr. Rosenthal's opinions are not supported by the evidence. First, the ALJ points to the contemporaneous progress notes as not supporting the limitations. However, the ALJ does not point to any specific notation that is inconsistent, instead he makes a general assertion that the notes "do not suggest such extreme limitations." (Tr. 447). The ALJ attempts to use a progress note written by Dr. Rosenthal as medical evidence inconsistent with the limitations in Dr. Rosenthal's opinion. He writes "[l]ittle in the way of examination results are provided by the physician, reference simply to a cushingoid appearance secondary to the steroids and some swelling of the right knee." (Tr. 446). The fact that this note discusses only the right knee swelling does not make the note inconsistent with the limitations on the wrist. Furthermore, this one note does not make the notes as a whole inconsistent, particularly when another note addresses inflamation in the right wrist. (Tr. 239). ALJ Bartelt's conclusion that because one note

he refers to was not focused on the right wrist, all of the progress notes are inconsistent with Dr. Rosenthal's opinion is not supported by substantial evidence.

The second reason listed in the ALJ's rejection of Dr. Rosenthal's opinion as not supported by the medical record was, "the treatment records ... often times do not address the right upper extremity, focusing instead [ ] on the right knee or other body system." (Tr. 447). Although it is true many of the medical records are focused on either the right knee or the cardiovascular system, the ALJ again does not specifically point to any inconsistency with the opinion of Dr. Rosenthal. *Id.* The ALJ also attempts to show inconsistencies between Dr. Rosenthal's opinion and Dr. Chan's examination. However, in an effort to show such alleged inconsistencies, ALJ Bartelt mis-characterizes Dr. Chan's examination. ALJ Bartelt describes Dr. Chan's "examination of the upper extremities to be quite good with no limitations noted as to grip or dexterity. There were no reports of significant exacerbations of the right-hand/wrist, focus being largely on the right knee...." (Tr. 447). To the contrary, Dr. Chan found the right wrist to have 0.5 inch swelling (equal to the amount of swelling of the right knee), reduction of 30 degrees of flexion and a reduction of 10 degrees for both ulnar and radial deviation. (Tr. 261). Although Dr. Chan did note that grip and dexterity were excellent, this was in regard to plaintiff's fingers, not his wrist. *Id.* Furthermore, Dr. Chan describes the plaintiff as having active rheumatoid arthritis in the right wrist. (Tr. 262). Because ALJ Bartelt mis-characterized the medical records in an attempt to show an inconsistency that was not present, his discounting of Dr. Rosenthal's opinion as being inconsistent is not supported by substantial evidence.

The final justification for the ALJ's rejection of Dr. Rosenthal's opinion was the infrequency of contact with the plaintiff. This justification appears to be the most compelling for the ALJ because he makes multiple references to the number of visits. The ALJ "notes only a single visit to Dr. Rosenthal, . . . with nothing leading up to the questionnaire. . . ." (Tr. 447). In addition, the ALJ states:

> Obviously if claimant had rheumatoid arthritis for 10 to 20 years and was still able to engage in rather strenuous and repetitive activities in the past, absent some significant incident or exacerbation, to go from performing those jobs to no repetitive use of the right-hand beyond 15 minutes in a day is extreme, *especially when frequency of visits to rheumatologists are so limited.*

*Id.* (emphasis added). The Commissioner concedes the assertion of only visiting Dr. Rosenthal once is incorrect. (Def.Br.6.) In fact, the evidence shows that Dr. Rosenthal met with the plaintiff on at least three occasions before offering her opinion. (Tr. 237, 245 and 247). The Commissioner suggests the mistake by the ALJ did not affect the "controlling weight" analysis. However, it is difficult to imagine the weight given to the opinion of Dr. Rosenthal was not affected by this mistake especially given the multiple references to the lack of visits.

 The weight given to Dr. Rosenthal's opinion by ALJ Bartelt is not supported by substantial evidence in the record. Although the form the opinion took is a factor in the determination of what weight a medical opinion is afforded, the form is not inconsistent with Dr. Rosenthal's reports. The failure to find inconsistencies in the medical record and the reliance on the mistake of how many times the plaintiff visited Dr. Rosenthal detract from the weight given by ALJ Bartelt and overcome any deference that should be

given to ALJ Bartelt's determination. Even though there may be enough evidence in the record to support a decision, this court cannot uphold it if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996). Therefore, the limited weight given to Dr. Rosenthal's opinion by the ALJ is not supported by substantial evidence.

**2. RFC determination**

In addition to the failure to give Dr. Rosenthal's opinion "controlling weight," plaintiff contends that ALJ Bartelt's RFC determination is not supported by substantial evidence. ALJ Bartelt made the following two findings: "(5) Up to February 1999 Claimant had the residual functional capacity to perform sedentary occupations which did not require him to use his right hand or wrist repetitively for more than one third of the workday"; and "(6) Claimant was probably able to perform his past relevant job as a cashier." (Tr. 450).

 Although the Commissioner does not specifically address the ALJ's finding that the plaintiff could have "probably" performed his past relevant job as a cashier, and plaintiff only discusses the issue in regard to the law of the case, if this finding was supported by substantial evidence in the record, it would end the inquiry and the plaintiff would not be disabled. *See Clifford v. Apfel,* 227 F.3d 863, 868 (7th. Cir.2000). However, because the ALJ used the modifier "probably" in front of able; because he did not demonstrate a path of reasoning to lead logically to the conclusion that the plaintiff could perform his past relevant work; and because ALJ Bartelt did not use this finding to support his ultimate conclusion, this finding at step four is not supported by substantial evidence.

In regard to the plaintiff's RFC, the ALJ's determination that the plaintiff could use his right hand and wrist for one-third of the day is discussed more thoroughly by both parties. The plaintiff argues that there is "no medical opinion that would support" such a limitation. (Pl. Br.10). Instead, the plaintiff believes that the one-third was "spun out of whole cloth." The Commissioner, on the other hand, believes that the ALJ took into consideration all the medical evidence in the record and in conjunction with the weight given to the medical evidence and the daily activities performed determined the plaintiff's RFC. (Def.Br.10).

█ It is the responsibility of the Commissioner to weigh the evidence, resolve conflicts and make independent findings of fact. *See Powers v. Apfel,* 207 F.3d 431, 434. ALJ Bartelt took into consideration the Wisconsin Disability Determination Services determination (noting that the determination was optimistic), Dr. Rosenthal's opinion (noting that it was too extreme) and the daily activities when fashioning the "one-third" RFC finding. However, because the ALJ's determination of RFC was in part based on the limited weight the ALJ gave to Dr. Rosenthal's opinion, which is not supported by substantial evidence, the ALJ's RFC finding is not supported by substantial evidence.

**3. Credibility**

█ The ALJ also made his own credibility determination and that played a role in his RFC finding. The court wonders how the ALJ was able to make a credibility determination since he did not see or hear the claimant testify. Of course, in view of the stroke suffered by the plaintiff, it would have been fruitless to conduct a hearing for the purpose of taking his testimony. Without the opportunity to observe the claimant testify, the most the ALJ could have done was adopt the previous credibility determination. However, ALJ Bartelt did not adopt the previous credibility determination; instead, he worded his finding more strongly than ALJ Safren. ALJ Bartelt found "4. Claimant's testimony as to degree of pain and limitation at the time of his hearing in 1998 is found to be not credible with elements of exaggeration and secondary gain present." (Tr. 450) ALJ Safren who actually had the opportunity to see and hear the plaintiff testify found that "4. The claimant's testimony is found to be not credible *to the extent that such testimony reflects an inability to engage in sedentary work activities subject to the* [one-third workday] *limitations* cited in Finding No. 5." (Tr. 21) (emphasis added). Bartelt's much stronger determination introducing elements of exaggeration and secondary gain is not supported by any analysis of the evidence. Without the benefit of an opportunity to see and hear the plaintiff testify, and without establishing any other basis for a different determination, the credibility finding is not supported by substantial evidence.

**C. Vocational Evidence**

At step five, the major issue in contention is the vocational evidence. During the hearing conducted by ALJ Safren, evidence was received from a vocational expert (VE) Maude Prall. At the hearing, the VE responded to hypothetical questions posed to her by ALJ Safren regarding restrictions consistent with Dr. Rosenthal's opinion and the "one-third" restriction discussed earlier. (Tr. 52–55). In regard to the hypothetical question consistent with Dr. Rosenthal's opinion, the VE indicated that there were no jobs such a person could perform. (Tr.52). In addition to the hypotheticals, plaintiff's attorney questioned the VE regarding discrepancies between her testimony and

the Dictionary of Occupational Titles (DOT). (Tr. 56–71). As was pointed out by plaintiff, much has changed in the evaluation of vocational evidence since the hearing. SSR 00–4p now requires the adjudicator to "elicit a reasonable explanation" for conflicts between occupational evidence received from the VE and the listings in the DOT.SSR 00–4p. Although SSR 00–4p states: "In making disability determinations, we rely primarily on the DOT," there are situations where evidence offered by the VE is reasonable to rely on rather than the DOT. *Id.*

The plaintiff argues that "ALJ Bartelt was not excused from following" the new policy and eliciting a reasonable explanation of the differences between the DOT and the VE's testimony. (Pl. Reply Br. 3). The Commissioner responds by saying the ALJ addressed the conflicts and any conflict was "nevertheless harmless." (Def.Br.11). One of the discrepancies between the VE and the DOT was whether certain jobs should be classified as simple, unskilled or semi-skilled. ALJ Bartelt attempted to address this by stating that ALJ Safren's hypotheticals were not limited to unskilled jobs and that plaintiff still had the mental capacity to perform semi-skilled work. (Tr. 448). In other words, any discrepancies do not matter. This approach misses the point, for in order to rely on a VE's testimony as ALJ Bartelt did in this case, he still must "elicit a reasonable explanation" for the discrepancies. Before the ALJ could conclude whether or not the discrepancies between the VE and the DOT mattered, it was incumbent upon him to analyze the nature and extent of those discrepancies. Furthermore, ALJ Bartelt also suggests, again without explanation, that the discrepancies do not matter because even 1,500 jobs in the Milwaukee area have been found to be a significant number. (Tr. 449). But without discussing and re-

solving any discrepancies between the DOT and the VE, how can the ALJ conclude how many jobs actually exist? In this regard, either a new hearing to elicit clarifying testimony from the VE, or supplemental report from the VE, would have been beneficial. But the ALJ did neither; he relied on prior testimony from a VE and unsuccessfully attempted to fashion an explanation which dispensed with differences between her testimony and the DOT. His attempts are not persuasive, and his determination at step five is not supported by substantial evidence.

### D. Appeal's Council's Remand Order (Tr. 470–71).

Based on the foregoing reasons it is unnecessary to discuss whether ALJ Bartelt violated the remand order of the Appeal's Council or whether the letter written by Attorney Angermeier is a valid waiver complying with SSR 79–19. As indicated earlier, affording the plaintiff an opportunity to appear would have been meaningless in light of his stroke, but an additional hearing would have been helpful in clarifying the testimony of the VE and clarifying the medical record.

### III. CONCLUSION

It is the ALJ's responsibility to assess the evidence in the first instance. However this court may reverse the Commissioner and either award benefits or remand for further proceedings. 42 U.S.C. § 405(g). This case was previously remanded for further proceedings at which time the Commissioner was directed to "reconsider the plaintiff's RFC in light of the VA determination, to reconsider the weight to be afforded Dr. Rosenthal's opinion and to receive additional vocational opinion if necessary." Although the Commissioner considered and properly discounted the VA determination, the other

two prongs of the remand order were not fulfilled. In addition to failing on two prongs of the remand order, the Commissioner created two additional errors by making an unsupportable credibility finding, and by basing his ultimate RFC determination on a faulty evaluation of the weight to be afforded Dr. Rosenthal's opinion. Even with two attempts to fulfill her burden at step five, the Commissioner has failed. Therefore, an additional remand would serve no useful purpose, but would merely cause further delay. The Commissioner has the burden of proof at step five, and has failed to establish that there are other jobs in the economy that plaintiff can perform. In fact, in applying the limitations imposed by Dr. Rosenthal, who the ALJ failed to adequately discredit, the VE stated that no jobs were available. The plaintiff is entitled to disability benefits for the limited period in question. Pursuant to sentence four of 42 U.S.C. § 405(g), this case should be remanded to the Commissioner with a direction to compute and award benefits.

**IT IS THEREFORE ORDERED** that this case is **reversed and remanded** pursuant to sentence four of 42 U.S.C. § 405(g). On remand the Commissioner is directed to compute and award benefits to the plaintiff for the time period September 20, 1996, to February 11, 1999.