In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2513

Judy K. Powers,

Plaintiff-Appellant,

v.

Kenneth S. Apfel, Commissioner
of the Social Security Administration,

Defendant-Appellee.


Appeal from the United States District Court
for the Southern District of Indiana, New Albany Division.
No. NA 98-134-C H/G--David F. Hamilton, Judge.


Argued January 6, 2000--Decided March 20, 2000



        Before Coffey, Flaum and Kanne, Circuit Judges.

        Kanne, Circuit Judge.  Judy K. Powers suffers
pain from several physical ailments, which forced
her to quit her job in housekeeping at an Indiana
state-operated mental health facility. However,
her application for Social Security disability
benefits was denied because the evidence of her
disability and her suitability to work was not
clear cut. Based on a determination by an
administrative law judge ("ALJ" or "hearing
officer"), the Social Security Administration
(the "Agency") denied her claim for disability
benefits under the Social Security Act, 42 U.S.C.
sec.sec. 416(i), 423(d) (the "Act"). She appeals
that decision on the ground that the hearing
officer's decision was not supported by
substantial evidence. After reviewing the
evidence presented at the hearing, we affirm.

I.  History

        Powers worked for eighteen years as an aide and
housekeeper at Muscatatuck State Hospital. She
quit her job on February 20, 1995. At the time,
Powers was 46 years old and had a GED but no
vocational training or other work experience. Her
work was characterized as "unskilled, medium
work" with no transferrable skills. She suffered
from a variety of health conditions that made it

difficult and painful for her to work.

Her symptoms included feeling tired all the time despite sleeping thirteen hours a day with two two-hour naps; hip, back and leg pain; breathing problems and shortness of breath. She could only sit or stand in the same position for ten minutes at a time, could walk only a short distance before becoming short of breath and could lift a gallon of milk once, but not repetitively. She could not stoop, squat, bend at the waist, climb, push or pull without pain. She took painkillers and other medications, which afforded her partial relief. She engaged in very few activities, including driving to the grocery store twice a week and to a shopping mall once a month, watching television, doing crossword puzzles and reading. She did some light work around the house, such as washing dishes, laundry and cooking. However, her mother did most of the housework, and Powers said she felt like doing nothing most of the time. She stopped driving because of concentration and memory problems.

Her condition stemmed from several physical disorders for which she received treatment prior to February 1995. Powers had been diagnosed in 1993 with diabetes mellitus, which was controlled by medication. She had surgery for carpal tunnel syndrome in July 1994, and later that year, she was re-diagnosed with chronic obstructive pulmonary disease, which her physician, Dr. James Sublett, characterized as in stable condition. Dr. Thomas Eckert, her family doctor, treated her for acute sciatic pain in 1992, 1993 and 1994, and in June 1994, Dr. Larry Olson diagnosed Powers as having degenerative disc disease of the cervical spine. She underwent physical therapy, which relieved the pain. In July 1994, Dr. Marlene Aldo-Benson, a rheumatology specialist, diagnosed fibromyalgia, a condition characterized by pain and stiffness in the muscles, tendons and soft tissue. In September 1994, Aldo-Benson diagnosed Powers with trochanteric bursitis, an inflammation affecting the femur, and noted a flare-up of her fibromyalgia.

In February 1995, Eckert recommended that Powers not work for one month due to the fibromyalgia, but that period lengthened when she showed no improvement. By October 1995, Powers continued to complain of fatigue and general malaise and believed she could not work. Eckert noted that she had gained weight and emphasized to her the relationship between her diet and her other conditions. In January 1996, Eckert classified Powers as permanently disabled due to the fibromyalgia and pulmonary problems. Eckert recommended a pain clinic, but Powers did not go regularly because it was too far away. In March

1996, Powers complained of severe left hip pain, for which Aldo-Benson recommended a physical therapist. Powers claimed she could not see the physical therapist, however, because of the distance she would need to travel to get there. Dr. Michael Cronen, an osteopath, examined her for the first time in March 1996. Cronen found no sensory or motor deficits in Powers' upper or lower extremities, and a magnetic resonance image of her lumbar spine revealed no disc disruptions. Cronen recommended nerve blocks, but Powers reported no improvement in April 1996. A pain clinic she attended that year provided her some relief.

Powers also suffered from depression, which Eckert diagnosed in 1992 but for which she received no care. As part of her application for Social Security disability benefits, Powers was examined by psychologist R. Karkut, Ph.D., who confirmed the diagnosis of "major depression, single episode-mild." In June 1995, Dr. Greer prescribed Prozac, and Powers reported that it helped her depression. At the hearing, Powers testified that she had crying spells two or three times a day, but also said she was not totally forthright with Karkut about the extent of her depression because she did not want to appear "crazy."

The administrative law judge addressed three conditions that could be considered disabilities under the regulations: chronic obstructive pulmonary disease, fibromyalgia and depression. Because her depression was diagnosed as relatively minor and did not affect her ability to perform basic work functions, it was ruled not to qualify as a severe impairment. Powers failed only one test for pulmonary sufficiency. That test did not comply with some regulations connected to the administration of the test and therefore was not counted. Finally, under the regulatory definition of a musculoskeletal condition, Powers' fibromyalgia failed to qualify as an impairment.

The ALJ then determined Powers' residual functional capacity. Based on her testimony and that of her doctors, the ALJ determined that 1) Powers could lift up to ten pounds frequently, 2) Powers needed to be able to switch between sitting and standing on the job (a sit/stand option), and 3) Powers' pain and depression had no impact on her concentration, persistence or pace of work. The hearing officer further determined that Powers' testimony about her ability to work was not fully credible because of the following:

[I]nconsistencies in the claimant's testimony

regarding her activities of daily living, the fact that her symptoms cannot be reasonably expected given the objective medical evidence, especially her problems with concentration, and the fact that the claimant is taking no medications for severe pain and that she can sit for much longer periods than she alleges.

The hearing officer partly based this credibility determination on his observation that Powers sat for much longer than ten minutes during the hearing itself and had sufficient concentration ability to read and watch television for long periods of time.

Despite this, the ALJ determined that Powers suffered from pain, shortness of breath and depression that made it impossible for her to work at her old job. The ALJ then shifted the burden to the Commissioner to show that work appropriate for her physical ability and vocational qualifications existed in significant numbers in the national economy. The ALJ consulted with Timothy Janikowski, a Ph.D. and vocational expert, who based his opinion on published and unpublished research and data collected from state and federal databases, labor market surveys, interviews and labor economists. Janikowski testified that for a hypothetical worker of Powers' age, education and work background who is capable of lifting ten pounds and required a sit/stand option, there were about 42,000 jobs in the regional economy, including watchman/security guard (7,100 jobs regionally), assembly (5,000-6,000 jobs) and cashier (30,000 jobs). Adding to the hypothetical the factor of mild to moderate pain which had no impact on concentration, persistence or pace, Janikowski testified that all the listed jobs would accommodate such a person. Based on the medical testimony, credibility determination and Janikowski's opinion, the ALJ found Powers capable of performing work that exists in significant numbers in the national economy and therefore not disabled within the meaning of the Act.

After exhausting administrative appeals, Powers filed suit under 42 U.S.C. sec. 405(g) in the United States District Court for the Southern District of Indiana. District Judge David Hamilton affirmed the ALJ's decision, and Powers appealed.

II.  Analysis

Powers contends on appeal that the ALJ's decision regarding her credibility and the ALJ's reliance on the vocational expert's opinion were not supported by substantial evidence. The

Agency's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. sec. 405(g). "Although a mere scintilla of proof will not suffice to uphold the SSA's findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Because the Commissioner is responsible for weighing the evidence, resolving conflicts and making independent findings of fact, see Perales, 402 U.S. at 399-400, this Court may not decide the facts anew, re-weigh the evidence or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled. See Butera v. Apfel, 173 F.3d 1049, 1055 (7th Cir. 1999).

A.  Powers' Credibility

Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference. See Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997). We will reverse an ALJ's credibility determination only if the claimant can show it was "patently wrong." Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990).

In this case, the ALJ based his credibility determination on a variety of facts and observations. First, the ALJ found that Powers did indeed suffer some pain from her medical conditions, but that the medical evidence did not support the extent of pain to which she complained. Drs. Aldo-Benson and Sublett supported her complaints of fibromyalgia and pulmonary insufficiency, but did not indicate any work restrictions related to those conditions. Moreover, Sublett characterized her pulmonary condition as "stable." This was enough evidence to support the claim that Powers' ability to lift, carry and walk were limited, but not to the completely debilitating extent Powers alleged. As such, the discrepancy between the minimal impairment expected from her conditions and her testimony of debilitating pain casts doubt on her credibility.

Second, the ALJ also found Powers' testimony about her daily activities to be inconsistent with her reports of her daily activities made to Karkut and on Agency forms. He also found her claim of concentration problems inconsistent with the medical evidence and with her testimony that she can read, watch television for hours and play cards. While we are skeptical that the ability to

watch television for several hours indicates a long attention span, we agree that reading and playing cards do suggest such a trait. In her discussion with Karkut, Powers reported that she sometimes helped cook meals, usually set the table and once in a while did laundry. She reported on her forms to the Agency that she did grocery shopping, went to the mall, dined out, visited with friends and played cards. At the hearing, she testified that she performed no daily activities and that her mother and husband did the cooking, washing and other household chores. This testimony is not wildly inconsistent, but represents a minor variation in her account of her daily life. The many interviews and forms required to apply for disability benefits should not be viewed as traps for slightly varied accounts of daily activities, but in this case, the minor discrepancy combined with the hearing officer's observations of the witness during testimony does provide some small support for a finding of incredibility. As the reviewing court, we are looking only to determine if the credibility determination was patently wrong, and the hearing officer's assessment of her mildly inconsistent testimony combined with the other evidence discussed here, defeats this strict standard for reversal.

The ALJ found her complaints of severe pain to be inconsistent with the medical testimony and the absence of drugs prescribed for severe pain. While a hearing officer may not reject subjective complaints of pain solely because they are not fully supported by medical testimony, the officer may consider that as probative of the claimant's credibility. See Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995). The doctors who examined Powers diagnosed specific medical conditions which do cause pain, but only Eckert ever considered her to be suffering from disabling pain. The hearing officer was within his discretion to reject that opinion as conclusory and unsupported by the evidence. Furthermore, Powers had been prescribed Valium, Darvocet and Relafen, none of which are intended to treat severe pain. The discrepancy between the degree of pain attested to by the witness and that suggested by the medical evidence is probative that the witness may be exaggerating her condition. For the hearing officer to rely on this as evidence of a lack of complete candor cannot be deemed patently wrong.

Finally, the hearing officer considered Powers' statement that she could not sit for more than ten minutes without severe pain to be inconsistent with his observation of her during the hearing, at which she sat for far longer than ten minutes, apparently without signs of

discomfort. Many courts have condemned the "sit and squirm" test, and we are uncomfortable with it as well. See, e.g., Miller v. Sullivan, 953 F.2d 417 (8th Cir. 1992); Myers v. Sullivan, 916 F.2d 659 (11th Cir. 1990); Jenkins v. Sullivan, 906 F.2d 107 (4th Cir. 1990); Lovelace v. Bowen, 813 F.2d 55 (5th Cir. 1987). We doubt the probative value of any evidence that can be so easily manipulated as watching whether someone acts like they are in discomfort. However, we note that even those courts cited by Powers as opposing the "sit and squirm" test endorse the validity of a hearing officer's observations of the claimant. See Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); Miller, 953 F.2d at 422; Lovejoy v. Heckler, 790 F.2d 1114, 1116 (4th Cir. 1986); Lovelace, 813 F.2d at 60. Likewise, we have repeatedly endorsed the role of observation in determining credibility and refuse to make an exception in this situation. See, e.g., Dray v. Railroad Retirement Bd., 10 F.3d 1306, 1314 (7th Cir. 1993); Erhart v. Secretary of Health and Human Servs., 969 F.2d 534, 541 (7th Cir. 1992); Strunk v. Heckler, 732 F.2d 1357, 1362 (7th Cir. 1984). The hearing officer had an opportunity to observe Powers for an extended period of time and could gauge whether her demeanor, behavior, attitude and other characteristics suggested frankness and honesty and were consistent with the general bearing of someone who is experiencing severe pain. Also, because the witness showed no signs of pain, there is no danger that she attempted to manipulate the hearing officer by squirming. As one of several factors that contributed to the hearing officer's credibility determination, we cannot say this rendered that judgment "patently wrong." Therefore, we will uphold the hearing officer's credibility determination as supported by substantial evidence.

B.  Vocational Evidence

     The Agency has the burden of providing evidence of a significant number of jobs in the national economy that the claimant could perform. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Knight, 55 F.3d at 312. Powers claims that the hearing officer erred in relying on Janikowski's expert testimony in finding that there were more than 40,000 jobs in the regional economy that someone could perform with Powers' vocational and physical profile. Powers contends that Janikowski's testimony was unclear as to whether the 40,000 jobs included a sit/stand option and whether they matched Powers' skill level. However, a review of the expert's testimony shows that Janikowski was asked expressly for jobs that included a sit/stand option and matched Powers' skill level. To argue now that the expert's

testimony was "unclear" ignores the express limitation in the hearing officer's questions to the expert that clearly stated the conditions under which the opinion was to be expressed.

Powers relies heavily on Social Security Ruling 83-12, which states that "unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." Yet Janikowski was asked the number of jobs that did have a sit/stand option, so this Agency description of what the case is "ordinarily" does not refute, by itself, the opinion of an expert in response to a specific question. Even if Janikowski's testimony were considered to contradict the description of sedentary work in the Dictionary of Occupational Titles, which we do not believe it does, a hearing officer is entitled to rely on expert testimony that contradicts such authorities. See Young v. Secretary of Health and Human Servs., 957 F.2d 386, 391-92 (7th Cir. 1992). Therefore, substantial evidence supported the finding that a significant number of jobs existed that could accommodate Powers' skill level and physical needs.

III. Conclusion

The hearing officer's finding that Powers' testimony was not entirely credible was supported by substantial evidence and not patently wrong. Furthermore, a review of the record shows that sufficient competent evidence supported the hearing officer's finding that jobs matching Powers' needs existed. We affirm the Agency's denial of disability benefits.