Randy HUNTER, Plaintiff–Appellant,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.

No. 02–2201.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 18, 2002.

Decided Jan. 21, 2003.

Before EASTERBROOK, MANION, and EVANS, Circuit Judges.

### ORDER

Randy Hunter applied for Social Security Disability Insurance Benefits (DIB) in March 1997, claiming that several ailments including osteoporosis, chronic obstructive pulmonary disease, and upper extremity pain had prevented him from working since June 1996. An administrative law judge (ALJ) denied benefits, the district court affirmed, and Hunter now appeals. He argues that the ALJ erred in three ways: failed to adequately explain his decision to exclude hand and finger limitations in his residual functional capacity (RFC) assessment; failed to properly evaluate the treating physician's opinion; and improperly discredited Hunter's testimony. Although this is a close case because the ALJ did not fully explain his reasons for rejecting some medical opinions, we affirm because his decision is supported by substantial evidence.

### I.

The record is not clear as to the genesis of Hunter's medical problems. Hunter, who was 52 years old as of his onset date

(June 25, 1996), is a high school graduate who has previously worked as an electronics assembler and an associate chemical engineer. He was first diagnosed with osteoporosis and high blood pressure in 1992, and quit working shortly afterward in 1993. In 1995 Hunter began seeing Dr. Thomas Mertins, who would treat him for the next two years. Dr. Mertins diagnosed Hunter with osteoporosis and chronic obstructive pulmonary disease (COPD). Hunter applied for DIB in March 1997 and was subsequently examined by Dr. Michael Holton at the request of the social security administration. Dr. Holton concurred in the diagnosis of osteoporosis and COPD and identified several pain-related ailments in Hunter's limbs that could affect his ability to work. The ALJ held a hearing in December 1998 at which Hunter testified and presented his medical records. At the hearing Hunter discussed his previous employment and history of medical problems. He described the pain he suffers on a daily basis as well as his day-to-day activities. In response to questioning by the ALJ, Hunter stated that while he could not wash windows or mop the floor, he did dust, wash dishes, cook, drive himself to the grocery store, and shop several times a week. Hunter testified that he lived by himself except when his parents came north during the summer from their winter home in Florida.

The ALJ also solicited testimony from a vocational expert. The vocational expert explained that someone of Hunter's age, education, and work experience with his impairments, who could not sustain public contact or a regimented pace of production, and could not be exposed to heavy dust, smoke or fumes, would be able to work as an associate chemical engineer (one of Hunter's previous jobs), an electronics inspector, or an electronics tester.

Applying the familiar five-step analysis, *see* C.F.R. § 416.920, the ALJ denied Hunter's application finding that he satisfied the first two steps because he suffered from severe osteoporosis and chronic obstructive pulmonary disease and had not engaged in substantial gainful activity since June 1996. But the ALJ concluded that Hunter's severe impairments did not meet or equal any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and thus he did not automatically qualify for benefits under the third step of the inquiry. The ALJ concluded Hunter also met the fourth step because his RFC would not allow him to perform his past work. Proceeding to the fifth step, the ALJ found that Hunter retained the residual functional capacity to work in the national economy, in jobs such as an electronics inspector and an electronics tester. Hunter then appealed to the agency's appeals council, but his request for review was denied, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981.

## II.

We uphold an ALJ's decision denying disability benefits if the ALJ applied the correct legal standard and substantial evidence supported the decision. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir.2002); *see also* 42 U.S.C. § 405(g). Substantial evidence "requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir.2000) (internal quotation omitted). When we review an ALJ's decision, we accept the ALJ's factual findings and will not reweigh the evidence. *Id.*

### A. ALJ's Rejection of Hand–or–Finger Limitations in the RFC

On appeal, Hunter first challenges the ALJ's decision to exclude hand-and-finger

limitations in the RFC assessment. Hunter argues that the ALJ failed to articulate why he chose not to credit the medical evidence presented by Dr. Holton. In his decision, the ALJ detailed the evidence provided by Dr. Holton, including all the evidence of Hunter's pain and stiffness in his hands and fingers; significantly, however, the ALJ never stated why he discredited that evidence or why that evidence did not support a finding of a work limitation. Hunter accurately identifies our requirement that the ALJ build "an accurate and logical bridge from the evidence to his conclusion," *Steele*, 290 F.3d at 941 (internal citation omitted), but we have also held that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989). Although the ALJ failed to specifically articulate his reasons for discrediting Dr. Holton's testimony concerning Hunter's possible hand-and-finger limitations, he did set forth the medical evidence provided by Dr. Holton. The ALJ acknowledged that Dr. Holton administered a neurological examination which revealed the following: normal muscle strength and tone in all four extremities; no evidence of muscle atrophy or spasms; diminished deep tendon reflexes; no gross sensory deficits; 68–pound grip strength in his right hand and 28–pound strength in his left; and mild to moderate degenerative changes and stiffness in the finger joints of both hands. The ALJ also included Dr. Holton's findings of presumptive bilateral carpal tunnel syndrome and a possible right shoulder rotator cuff tear.

■ The ALJ's decision contains all the relevant medical evidence that allows a reviewing court to "track the ALJ's reasoning and be assured that the ALJ con-sidered the important evidence." *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir.1995). The ALJ summarized Dr. Holton's medical evidence and Hunter does not contend that the ALJ left out necessary information, so a reviewing court could confirm that the ALJ considered all the relevant evidence. From that evidence, we can track the ALJ's reasoning and determine there was substantial evidence to support the ALJ's decision.

### B. Treating Physician's Opinion

Second, Hunter argues that the ALJ improperly rejected the medical opinion of Dr. Mertins, his treating physician, that he be restricted to sedentary work. Dr. Mertins treated Hunter from February 1995 through May 1997, diagnosing him with hypertension, osteoporosis, and COPD. In response to the inquiry from the Social Security Administration, Dr. Mertins opined that any work done by Hunter would have to be sedentary and not include any heavy lifting or straining.

A treating physician's opinion is entitled to controlling weight if well supported by medical findings and not inconsistent with other substantial evidence in the record, *see Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir.2000); 20 C.F.R. § 404.1527(d)(2). When considering whether to accept a medical opinion, an ALJ will give more weight to an opinion supported by "medical signs and laboratory findings" than one that is not, and the ALJ must consider the extent to which the doctor's opinion is supported by medical signs and laboratory findings and the extent to which the source's opinion is consistent with the record as a whole. 20 C.F.R. § 404.1527(d).

■ The ALJ rejected Dr. Mertins' opinion, stating that the medical "records are hardly a basis for sedentary work restrictions." While the ALJ accepted Dr. Mertins' diagnoses of osteoporosis and

chronic obstructive pulmonary disease as they were supported by x-rays and laboratory results, he could find nothing in the records that would provide a medical basis for the doctor's conclusion of sedentary work restrictions. The ALJ pointed to the records provided by Dr. Mertins that reflected mostly office visits for unrelated ailments, including genital itching, blood in the urine, and routine check-ups for hypertension, but none of those records support Dr. Mertins' conclusion that Hunter should be restricted to sedentary work. Therefore, the ALJ was not required to give controlling weight to the treating physician's opinion.

## C. Hunter's Credibility

Third, Hunter argues that the ALJ wrongly discredited his own testimony about the pain caused by his various ailments. The ALJ concluded that Hunter was "not substantially credible," because his testimony that he was able to live on his own, cook, shop, drive and do light household chores contradicted his statements that he was unable to perform sustained work-related activity.

■ Because an ALJ is in the best position to judge credibility, we reverse an ALJ's credibility determinations only if they were "patently wrong." *Powers,* 207 F.3d at 435. When considering a claimant's testimony regarding pain, the ALJ must set out reasons for the weight given to that testimony. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir.2001). Here, the ALJ adequately explained his reasoning for finding Hunter not credible. As the ALJ found, Hunter's description of his day-to-day activities conflicted with his testimony that his pain was severe and constant, and therefore substantial evidence supports the ALJ's credibility determination.

Hunter also argues that the ALJ wrongly discredited his testimony by improperly considering his failure to seek medical treatment for his pain. He contends that the ALJ drew unfavorable inferences based on the infrequency of visits he paid to the doctor. Although the ALJ did mention Hunter's failure to seek treatment, that reference was made in the context of a different issue–namely, the weight to be accorded to Dr. Mertins' opinion in light of the limited records he had provided. The ALJ did not consider Hunter's failure to seek treatment in his assessment of his credibility.

Hunter also contends that the ALJ failed to adequately consider and explore the physical manifestations of his pain in assessing his credibility. Hunter concedes that the ALJ found that medical evidence did not support his allegations of pain and the ALJ went as far as including limitations based on psychological affects of his chronic pain in his RFC assessment–eliminating potential jobs where Hunter would be required to work at a closely regimented pace of production and have intense public contact. Nevertheless, Hunter argues that the ALJ should have considered physical manifestations of this pain disorder, such as "a reduction in physical endurance which results in fatigue and more pain."

We require an ALJ to consider objective medical evidence of pain, and Hunter has conceded that the ALJ addressed the medical evidence of pain and found it to be insufficient to support Hunter's allegations of pain. The ALJ determined that Hunter was able to perform daily activities, had no complaints about job performance from previous employers, only took over-the-counter pain medication. The ALJ also fully addressed the medical evidence. *See Clifford,* 227 F.3d at 872. Thus the ALJ adequately supported his reasons for find-

ing Hunter's allegations of pain to be not credible.

### III.

Because the ALJ's decision is supported by substantial evidence, we affirm the district court's decision.