Marcia J. McCARTY, Plaintiff–
Appellant,

v.

Jo Anne BARNHART, Defendant–
Appellee.

No. 03–1910.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 16, 2003.

Decided Jan. 5, 2004.

Eva I. Guerra, White Lake, MI, for
Plaintiff–Appellant.

Elizabeth Firer, Social Security Admin-
istration, Office of the General Counsel,
Chicago, IL, for Defendant–Appellee.

Before BAUER, POSNER, and EVANS, Circuit Judges.

### ORDER

Marcia McCarty seeks disability insurance benefits, alleging that she is unable to work due to lower back pain, difficulties with her heart, and memory loss related to a heart attack. The Social Security Administration determined that although McCarty had several "severe" impairments, she retained the residual capacity to perform her past relevant work as an inspector and consequently was not disabled. She appeals this decision, and we affirm.

McCarty has not worked since October 1996, when she injured her back falling down concrete stairs during a work break. She was taken to a hospital, where she was x-rayed and diagnosed with bruising of her head, buttocks, and tailbone. A CT scan performed two weeks after the accident revealed a "mild diffuse disc bulge" between two of her vertebrae and a "mild degenerative change" in the facet joints in her lower back. McCarty was referred to orthopedic surgeon Dr. Aivars Vitols, who noted that she was experiencing lower back pain that increased when she bent over to sweep, wash dishes, or make the bed. Dr. Vitols noted that despite her pain and restricted movement, there was "good rehabilitation potential for reducing the pain and increasing pain-free movement."

In June 1997 McCarty suffered a heart attack during which her heart stopped. Afterwards she complained of short-term memory loss, which her cardiologist attributed to the lack of oxygen to her brain during the attack. During an examination in September 1997, neuropsychologist Dr. Brandon Davis administered a Wechsler memory test to McCarty, and she scored "in the average range for overall general memory functioning." Dr. Davis reasoned that because McCarty claimed to have had a very good memory, it was "possible and probable" that her memory was not as good as it once was and that "an average memory may be difficult for her to adjust to."

Over the course of the next year, McCarty continued to experience health problems related to her back and shoulder. In March 1998 Dr. Vitols noted that McCarty still had lower back pain and moderate pain at the base of her spine but had only minimally restricted spine movement. Dr. Vitols also noted that McCarty suffered from a condition caused by compression of the shoulder tendons but that a cortisone injection had almost totally eliminated her pain. Two weeks later Dr. Vitols re-examined McCarty, who stated that after the injection her shoulder had been more or less pain-free. In November 1998 McCarty told Dr. Vitols that she continued to experience lower back pain, and the doctor noted that McCarty's spinal motion was no more than 60% of the normal range in all directions. In June 1998 state agency physician Dr. Joseph Grady examined McCarty and reported that she had some decreased range of motion in her spine, shoulders, arms, and legs.

In July 1998 state agency physician Dr. W.S. Tucker completed a residual functional capacity assessment. He concluded that McCarty could perform light work but noted that McCarty could not raise her left arm effectively above shoulder level. Dr. Davis, the neuropsychologist, re-examined McCarty in July 1998 as well, diagnosing her with depression but describing her as "independent with her personal habits." In December 1998 McCarty's cardiologist noted that her cardiovascular prognosis was good and that her medication for coronary disease would not present a problem during employment.

After her application for benefits was denied, a hearing was held before an administrative law judge ("ALJ"). McCarty testified about her previous employment as a light machine operator and as an inspector and told the ALJ that her back and memory were the two greatest impediments to her ability to work. As an inspector, she said that she sat or stood while visually inspecting piston rings. When asked whether she could continue to work as an inspector, McCarty replied that she could because she could sit or stand, but then attempted to qualify her answer, stating that, "But then, I don't know, I haven't tried it [working]. It – sometime if I push my back it gets to hurting so bad I have to lay down." McCarty also said that she did some housework, laundry, and computer work.

McCarty submitted "Rest" and "Pain" questionnaires from two of her treating physicians, Dr. Robert Kominarek and Dr. Vitols. Both doctors noted on the questionnaires that McCarty "requires complete freedom to rest frequently without restriction." McCarty also submitted a letter from Dr. Vitols, in which he opined that she was "permanently and totally disabled."

Following the five-step disability analysis set forth in 20 C.F.R. § 404.1520, the ALJ found that McCarty had not engaged in a substantial gainful activity since injuring her back in October 1996. He found that McCarty had "severe" impairments of a sprain or a strain of the lower back, residuals of a heart attack, and compression of the tendons in her left shoulder, but that none of these impairments–either alone or in combination–were listed in or equivalent to an impairment listed in the regulations. He concluded that McCarty retained the residual capacity to perform a limited range of light work, including her past relevant work as an inspector. In making this determination, the ALJ discredited McCarty's subjective complaints of pain to the extent that she purported to describe a condition of disability. After the Appeals Council denied her request for review and a district court affirmed the ALJ's decision, McCarty appealed to this court.

We review the ALJ's conclusions deferentially, upholding the decision if reached under the correct legal standard and supported by substantial evidence. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir.2000). Substantial evidence requires no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir.2000) (quotation marks omitted).

■ McCarty first argues that the ALJ erroneously discounted the opinions of Drs. Vitols and Kominarek. She contends that since nothing in the record contradicts the physicians' assessment that she required "complete freedom to rest frequently without restriction," these opinions were entitled to controlling weight. A treating physician's opinion is given controlling weight, however, only if it is well supported by medical findings and is not inconsistent with substantial evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir.2001); 20 C.F.R. § 404.1527(d)(2). The ALJ recognized that Drs. Vitols and Kominarek provided opinions that "would suggest that the claimant could not sustain any range of work due to pain and fatigue," but noted that neither physician supported his conclusion with objective medical evidence. Although both the "Pain" and "Rest" questionnaires specifically asked the doctors to identify the "medical findings that support [a functional capacity] assessment," the physicians cited nothing. Moreover, the ALJ found that the opinions were inconsis-

tent with substantial evidence in the record. He noted, for instance, that despite McCarty's lower back strain, "a CT scan revealed just mild degenerative changes." The ALJ also pointed out that "her cardiovascular status has been stable since her heart attack after conservative therapy," and that two physical examinations by Dr. Grady did not reveal a medical condition which would support the conclusions reached by Drs. Vitols and Kominarek. Since their "extremely pessimistic functional assessments" were "inconsistent with other substantial evidence of record," the ALJ rejected the assessments.

█ McCarty next contends that the ALJ erred in assessing her credibility. In particular, she asserts that the ALJ mischaracterized her testimony when he opined that the claimant "does chores in her two story home, including laundry, washing dishes, and cooking." She argues that this characterization disregarded the debilitating pain that she testified to suffering while performing these activities. She also argues that the ALJ erred in discounting the side effects of a cortisone injection that she received from her physician. Finally, she argues that the ALJ erred in discrediting her complaints of disabling pain, which she says were corroborated by both Dr. Vitols and Dr. Kominarek.

The ALJ was required to evaluate McCarty's subjective complaints of pain in determining whether she was disabled, see 20 C.F.R. § 404.1529, considering both the objective medical evidence, id. § 404.1529(b), as well as information provided by McCarty, her treating physician, or others, id. § 404.1529(c). In addition, the ALJ must evaluate her credibility in light of her (i) daily activities, (ii) the location, frequency, and duration of pain, (iii) precipitating and aggravating factors, (iv) the effects of medication, (v) treatment,

(vi) other measures used to relieve the pain, and (vii) other factors concerning functional limitations. Id. § 404.1529(c)(3). Although the ALJ must give specific reasons for findings on credibility, see Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002); Social Security Ruling 96–7p (1996), these findings are entitled to deference and will not be disturbed unless "patently wrong" in light of the record, Powers, 207 F.3d at 435; Diaz v. Chater, 55 F.3d 300, 308 (7th Cir.1995).

The ALJ here did not erroneously discount McCarty's complaints of pain. He considered her daily activities, noting that she "does household chores, drives to familiar places, attends church, sews, and uses her computer." Contrary to McCarty's contention that the ALJ disregarded the location, frequency, and duration of her pain in describing her activities, the ALJ did in fact explicitly acknowledge that, "[s]he complained that vacuuming causes her to have pain;" "[s]he may lie down if she feels tired or if her back hurts;" and "she may lie down if she is in pain or fatigued." Although these sorts of minimal activities are not sufficient to contradict subjective complaints of disabling pain, Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir.2000), the ALJ considered a number of other factors in questioning her pain complaints. The ALJ, for instance, found that McCarty's symptoms were managed conservatively, that she did not require major surgery, and that she did not suffer any side effects from medication. McCarty argues that the ALJ ignored evidence of the side effects of a cortisone injection, but she does not mention that her doctor had discontinued the cortisone and replaced it with another anti-inflammatory medication.

Perhaps most crucially, the ALJ relied on her testimony that she could return to her past work as an inspector. McCarty

disputes this characterization, arguing that she qualified her testimony by stating that, "[b]ut then I don't know, I haven't tried [working] . . . sometime if I push my back it gets to hurting so bad I have to lay down." The ALJ recognized that McCarty "hedged" but concluded that McCarty's "qualifications to her original response that she could do her past relevant work were not convincing." McCarty offers no argument challenging this conclusion. As for Drs. Vitols and Kominarek, the ALJ discredited their opinions because they were unsupported by medical findings and inconsistent with substantial evidence in the record. *See Dixon*, 270 F.3d at 1177. We conclude that the ALJ's decision reflects consideration of the appropriate factors, *see* 20 C.F.R. § 404.1529(c)(3), and substantiates his conclusion that McCarty's "allegations and reported limitations lack credibility to the extent that they purport to describe a condition of 'disability.' "

■ McCarty's remaining arguments are unpersuasive. First, she contends that the ALJ erred when assessing her past relevant work as "light" in nature. It appears that she simply confuses the exertional requirements of a light machine operator, which was "medium" work, with that of an inspector. Although McCarty inconsistently marked on her disability application both that the heaviest weight lifted at the inspection job was 20 pounds and that she "frequently" lifted 25 pounds, she told the ALJ that the job involved taking a handful of rings and visually inspecting them and that it could be performed with little or no lifting and while sitting or standing. The ALJ was entitled to resolve any inconsistency between her disability application and her hearing testimony in favor of her hearing testimony, *see Powers*, 207 F.3d at 434, so the ALJ did not err in concluding that her job as an inspector was "light" work, *see id.* at 435; *see also* 20 C.F.R. § 404.1567(b) (describing

"light" work). McCarty also contends that the ALJ ignored evidence of a mental impairment, namely her complaints of short-term memory loss. McCarty, however, disregards portions of the ALJ's decision where he noted that the Wechsler memory test scored her as having an average memory; that her neuropsychologist did not diagnose her with any memory or cognitive disorder; and that the evidence demonstrated that mentally, she was "no more than slightly restricted in the activities of daily living and social functioning." Finally, McCarty argues that substantial evidence does not support the conclusion that she was able to do light work. But the ALJ noted that state agency physician Dr. Tucker reviewed the medical evidence in determining that she could perform light work, and the ALJ discussed the findings of examining physician Dr. Grady as well as McCarty's own testimony in concluding that she was not disabled and could perform her past relevant work.

Therefore, we AFFIRM the judgment of the district court.