**Donald W. JACOBY, Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.**

No. 03–2550.

United States Court of Appeals, Seventh Circuit.

Argued March 3, 2004.

Decided March 23, 2004.

Eva I. Guerra, White Lake, MI, for Plaintiff–Appellant.

Patrick Nagle, Social Security Administration, Office of the General Counsel, Chicago, IL, for Defendant–Appellee.

Before POSNER, ROVNER, and EVANS, Circuit Judges.

## ORDER

Donald Jacoby seeks disability insurance benefits, alleging that he is unable to work due to arthritis in his left knee. The ALJ found that although Jacoby has physical limitations and cannot perform his past relevant work, he retains the capacity to perform other occupations within the national economy and is therefore not entitled to benefits. The district court affirmed the Commissioner's denial of benefits. We affirm the judgment of the district court.

## I. Background

In 1995 Jacoby, then 53 years old, was working as a traction motor repairman for General Electric when he injured his left knee at work. Jacoby sought treatment from Dr. Dale Doerr, an orthopedic surgeon, who performed arthroscopic knee surgery in August 1995. This was Jacoby's second arthroscopic surgery on his knee; the first was in 1980. After two months of physical therapy, Jacoby returned to work with no restrictions. In April 1998, however, Jacoby reinjured his knee getting out of a car. Dr. Doerr recommended another arthroscopic surgery, which he performed the following month.

As Jacoby recovered from surgery, Dr. Doerr noted that he continued to have problems with pain and swelling of the knee, and had not yet regained a full range of motion. Dr. Doerr's treatment notes reflect that in July, Jacoby complained of crunching in his knees, difficulty kneeling, and knee pain if he stood for more than 45 minutes or an hour. Dr. Doerr reported that Jacoby's knee continued to swell, but he had a range of motion in his left knee from 0 to 125 degrees (the normal degree of full flexion is 0 to 130–135 degrees). Dr. Doerr allowed Jacoby to go back to work with the following restrictions: "No standing for longer than one hour at a time, minimal ladder climbing and no kneeling." Dr. Doerr prescribed Naprosyn, an anti-inflammatory drug. Dr. Doerr stated that although Jacoby's condition probably would not get much better, "he may improve to the point where he will be able to do a normal standing type of a job."

Dr. Doerr saw Jacoby for the last time on August 12, 1998, and found his physical condition to be basically unchanged from July. Dr. Doerr discussed with Jacoby the possibility of performing a total knee replacement in the future. Dr. Doerr referred Jacoby for a second opinion to Dr. Dennis Dusek, an orthopedic surgeon. Dr. Dusek examined Jacoby and agreed with Dr. Doerr's assessment of his physical limitations. Dr. Dusek recommended that Jacoby continue with a "conservative course" of treatment until he could no longer walk a few blocks, and then a total knee replacement would be appropriate.

In February 1999 Jacoby applied for disability insurance benefits as of August 26, 1998, because of the arthritis in his left knee. In March 1999 Dr. Eugene Wenthe,

a state agency doctor, examined Jacoby and noted that he had swelling in his left knee, but could extend his knee and had flexion of 0 to 110 degrees. Dr. Wenthe noted that Jacoby's gait was unassisted and that he could walk further than 50 feet without assistance, but that he tended to favor his right side. Dr. Wenthe's notes reflect that the only medication Jacoby was taking was an aspirin once or twice per day.

In April 1999 another agency doctor, Dr. D. Widious, examined Jacoby and performed a Residual Functional Capacity (RFC) assessment. Dr. Widious considered Dr. Doerr's and Dr. Dusek's records and found that Jacoby's physical limitations matched those outlined in Dr. Doerr's treatment notes. Adopting the physical restrictions outlined in the notes of Dr. Doerr and Dr. Dusek, Dr. Widious determined that Jacoby was "reasonably capable of light work activity with only occasional climbing, stooping, crouching, kneeling and crawling." Dr. B. Rock Oh, another agency doctor, reviewed both Jacoby's medical records and Dr. Widious's report, and agreed with Dr. Widious's assessment.

Jacoby provided the only testimony during his administrative hearing in October 1999. He testified that his knee swelled every day and that he had continual pain, which he registered as seven or eight on a ten-point scale. He testified that Dr. Doerr required him to elevate his leg during the day to help alleviate the pain, and that he needed to do so six or seven hours every day. He stated that he could stand or walk for only 10 or 15 minutes at a time and only for one or two hours total during an eight-hour work-day. Jacoby testified that, if allowed to elevate his leg, he could sit for half an hour at a time. The ALJ questioned Jacoby about his daily activities, and he responded that he did not do much of anything during the day except "watch a little TV, read a little bit," and perform a few household chores, such as light dusting.

Before the hearing, the ALJ requested that a vocational expert (VE) examine Jacoby's medical records and give his opinion as to whether there were jobs that Jacoby could perform with his physical limitations. The VE considered Jacoby's physical limitations in determining that Jacoby could no longer work as a traction motor repairman. However, the VE found that Jacoby's skills from past work could be transferred to light work jobs, such as an electric motor fitter for railroad equipment, an electric motor assembler, or an electric motor analyst.

In October 1999, after the administrative hearing, Jacoby's attorney sent a three-page questionnaire to Jacoby's treating physician, Dr. Doerr. The questionnaire asked several questions about Jacoby's physical limitations and Dr. Doerr responded by ticking off the box next to the answer "yes" or "no" after each question. He did not expand on any of his answers. Under the section marked "Exertional Limitations," Dr. Doerr agreed with the statement that Jacoby could only perform "Sedentary Work" and suffered from "Moderately Severe" pain that would "Frequently (34–66%)" interfere with his ability to "maintain attention and concentration" and attend work on a regular basis. Dr. Doerr answered yes to the question: "Is it necessary for the patient to elevate the leg at waist level or above for two or more hours out of an eight hour day, as needed, for relief of pain and/or swelling?" Although Dr. Doerr had not examined Jacoby since August 12, 1998, he agreed with the statement that Jacoby's "symptoms and limitations existed at the same or similar degree of severity since 8/26/98."

In his decision, the ALJ applied the requisite five-step framework for determining benefit eligibility. The ALJ found that Jacoby had not been gainfully employed since his claimed disability began; that he did not suffer from impairments that met or equaled the level of severity of a listed impairment; that his arthritis prevented him from performing his past relevant work; but that Jacoby could perform light work with some non-exertional limitations. The ALJ applied the Medical Vocational Guidelines (the "grid") and found that Jacoby, even though 53 years old (qualifying as "approaching advanced age"), was not disabled. *See* 20 C.F.R. Part 404, Subpt. P, App. 2 §§ 202.14, 202.15 (2002).

The appeals council denied Jacoby's request for another hearing and Jacoby timely petitioned for review in the district court. The district court affirmed the ALJ's decision, and Jacoby now appeals.

## II. Analysis

The ALJ's conclusions are reviewed deferentially and should be upheld if reached under the correct legal standard and supported by substantial evidence. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir.2000). Substantial evidence requires no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir.2000).

■ Jacoby first challenges the ALJ's decision to disregard the opinions of his treating physician, Dr. Doerr, as set forth in his response to the questionnaire of October 1999. Jacoby argues that the ALJ should have accorded controlling weight to Dr. Doerr's opinions regarding his physical limitations.

While Jacoby is correct that an ALJ should generally give more weight to a treating physician's opinion partially be-

cause of its longitudinal view, *see generally* Social Security Ruling 96–2p, controlling weight is appropriate only if the opinion is well supported by medical findings and is not inconsistent with substantial evidence in the record, *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir.2001); 20 C.F.R. § 404.1527(d)(2). Here the ALJ decided not to accord controlling weight to Dr. Doerr's opinions from October 1999 because they were "inconsistent" with his treatment notes. For example, on the questionnaire Dr. Doerr agreed with the statement that it "is necessary for [Jacoby] to elevate the leg at waist level or above for two or more hours our of an eight hour day, as needed, for relief of pain or swelling," yet Dr. Doerr's treatment notes do not mention that Jacoby would need to elevate his legs. Similarly, Dr. Doerr's notes do not reflect that Jacoby's pain would interfere with his ability to focus on a task or attend work on a regular basis–a statement that Dr. Doerr agreed to on the October 1999 questionnaire. What Dr. Doerr's notes do show is that he believed Jacoby could return to work, provided that he did not have to stand for longer than one hour at a time, kneel, or perform minimal ladder climbing. The ALJ properly rejected Dr. Doerr's October 1999 opinions because they lacked substantiation in his earlier treatment notes or other medical findings.

■ Jacoby next challenges the ALJ's determination that his testimony of disabling pain was not credible. Jacoby attacks the ALJ's credibility determination on two grounds: (1) the ALJ incorrectly found that Jacoby's daily activities contradicted his testimony that he suffered from continuous, severe pain; and (2) the ALJ failed to consider Jacoby's use of prescription medication to control his pain.

An ALJ is required to evaluate a claimant's subjective complaints of pain in determining whether he is disabled, see 20 C.F.R. § 404.1529, considering both the objective medical evidence, *id.* § 404.1529(b), as well as information provided by the claimant, his treating physician, or others, *id.* § 404.1529(c). The ALJ must also evaluate the credibility of the claimant's testimony in light of his (i) daily activities, (ii) the location, frequency, and duration of pain, (iii) precipitating and aggravating factors, (iv) the effects of medication, (v) treatment, (vi) other measure used to relieve the pain, and (vii) other facts concerning functional limitations. *Id.* § 404.1529(c)(3). Although the ALJ must give specific reasons for findings of credibility, *see Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir.2002); Social Security Ruling 96–7p (1996), these findings are entitled to deference and will not be disturbed unless "patently wrong" in light of the record, *Powers,* 207 F.3d at 435.

The ALJ did not erroneously discount Jacoby's complaints of pain. The ALJ noted that Jacoby "enjoys watching television and reading, activities which are generally regarded to be inconsistent with pain levels so severe as to preclude extended concentration.... The claimant is able to drive an automobile, and there is no evidence that he is unable to perform personal care tasks." Although this kind of minimal activity might not be sufficient to contradict subjective complaints of disabling pain, *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir.2000), the ALJ also noted that Jacoby used only aspirin to manage his pain. *See Donahue v. Barnhart,* 279 F.3d 441, 444 (7th Cir.2002) (evidence that claimant "relied for pain control on over-the-counter analgesics" supports conclusion that pain is not disabling).

Jacoby's argument that he used the prescription drugs DepoMedrol, Relafen, and Naprosyn to control his pain is not sup-

ported by substantial evidence. Jacoby does not mention that he was prescribed Relafen once in 1997, DepoMedrol once in 1998 before his third surgery, and Naprosyn once in July 1998–all before he allegedly became disabled. Furthermore, both Relafen and Naprosyn are prescribed primarily as anti-inflammatory drugs, not to treat severe pain, *see Powers,* 207 F.3d at 435 (reliance on drugs not intended to treat severe pain suggests claimant may be exaggerating condition), and contain the same amount of pain medication found in aspirin, *see* 57 Physicians' Desk Reference 1617, 2891. The ALJ considered the appropriate factors and Jacoby has not demonstrated that the ALJ's credibility finding is patently wrong.

■ Finally, Jacoby challenges the ALJ's determination that he could do light work, even with some impairments–performing only occasional climbing, balancing, stooping, kneeling, crouching, or crawling, not using ladders, ropes or scaffolds, and avoiding dangerous machinery and heights. Jacoby argues that the ALJ's determination of his functional restriction failed to include Jacoby's need to elevate his leg and his claims of disabling pain. But as discussed earlier, the ALJ did not improperly exclude those restrictions because the ALJ reasonably determined that Jacoby's testimony was not credible and that Dr. Doerr's opinions were not supported by medical evidence. Jacoby does not explain how the ALJ's finding that he could perform light work is incorrect if his claims of leg elevation and disabling pain are not considered.

Jacoby argues that the ALJ should have sought the testimony of a vocational expert at the hearing "to assess how [the] non-exertional impairments affected the occupational base." We have said, however, that the use of a vocational expert "is entirely within the discretion of the ALJ." *Binion v. Shalala,* 13 F.3d 243, 246 (7th

Cir.1994) (quoting *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir.1992) ("vocational expert is not a required or even essential part of a disability benefits hearing")). After determining Jacoby's nonexertional limitations, the ALJ consulted Social Security Ruling 83–15 and properly determined that Jacoby's limitations would not have a significant impact on his ability to perform light work.

### III. Conclusion

The ALJ was presented with conflicting evidence regarding whether Jacoby's pain was disabling. Because the ALJ weighed all the relevant evidence and supported his conclusions with reasons grounded in the record, his denial of benefits was proper.[1] Accordingly, we affirm the district court's decision to uphold the Commissioner's denial.

---

1. We note that the ALJ's opinion contains a reference to a "Mr. Hamilton," but there is no Mr. Hamilton involved in this case. There are many scenarios that might account for this error; some more worrisome than others. However, we will not disturb the ALJ's determination because it is supported by substantial evidence.